Raymond McCLANAHAN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2008–SC–000033–MR.

Supreme Court of Kentucky.

April 22, 2010.

Daniel T. Goyette, Louisville Metro Public Defender, Bruce P. Hackett, Deputy Appellate Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General, Kenneth Wayne Riggs, Assistant Attorney General, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Raymond McClanahan, stands convicted of one count of second-degree robbery, four counts of third-degree burglary, and one count of theft (over $300). He was sentenced to a term of imprisonment of thirty-five years after pleading pursuant to an unusual plea agreement. It is to that plea agreement and the manner in which the sentence was imposed that the attention of this Court has been directed. Because the sentence exceeds twenty years, the appeal is to this Court as a matter of right. Ky. Const. § 110(2)(b).

Because we conclude that Appellant's sentence exceeds the maximum legal punishment allowable under the circumstances of this case, and we agree that the statutes and rules governing the imposition of the sentence were not properly observed, we reverse and remand this matter for further proceedings consistent with this opinion.

## I. BACKGROUND

Appellant appeared before the Jefferson Circuit Court, along with several co-defendants, charged under three indictments. Indictment 06–CR–1910 charged Appellant with one count of criminal syndication, two counts of third-degree burglary, and two counts of theft by unlawful taking over $300. Indictment 06–CR–2479 charged him with one count of third-degree burgla-

ry.[1] Indictment 06–CR–3335 charged him with one count of second-degree robbery. The facts underlying the crimes for which Appellant was convicted are not germane to this appeal and have not been discussed in the briefs.

Appellant entered into a set of plea agreements with the Commonwealth to resolve all three indictments. Under Indictment 06–CR–1910, he agreed to plead guilty to two counts of third-degree burglary and one count of theft by unlawful taking (over $300). Under Indictment 06–CR–2479, he agreed to plead guilty to one count of third-degree burglary. He also agreed to plead guilty to second-degree robbery as charged in Indictment 06–CR–3335. In return, the Commonwealth agreed to recommend a total sentence of ten years in prison for all the charges, and would object to probation.

Because Appellant wanted to be released from jail pending sentencing so that he could tend to his family's needs but was unable to post the required bail, the Commonwealth agreed that Appellant could be released on his own recognizance, provided that he agreed to what the trial court and the parties in this case referred to as a "hammer clause." A "hammer clause" is a provision of a plea agreement, apparently used in some locales, that allows a defendant to be released on his own recognizance pending sentencing. Ordinarily, the likelihood of an additional prison sentence for a bail-jumping charge provides adequate incentive to assure that one released from custody without financial conditions will return to court when scheduled. A plea with a "hammer clause" differs by providing that, if a defendant fails to return to court for sentencing (or violates some other agreed-upon condition of release), the Commonwealth withdraws its original sentencing recommendation and the defendant agrees to serve a more severe sentence instead.

Each of Appellant's plea agreements included a "hammer clause." Thus, the Commonwealth would recommend a combination of consecutive and concurrent sentences that would result in a ten-year prison sentence as long as Appellant complied with the conditions of his release. However, if Appellant failed to appear for his sentencing hearing, failed to keep his appointment with the probation office for the production of his pre-sentence investigation (PSI), or was charged with any offense, Class B misdemeanor or greater, then instead of the ten-year sentence, he "agree[d] to serve a 40–year sentence" and to forfeit his right to seek probation or shock probation.[2] The plea agreements

---

1. We find nothing in the record to explain how the final judgments reflected four burglary convictions despite the fact that Appellant was indicted for, and pled guilty to, only three burglaries.

2. The language of the "hammer clause" in each of Appellant's cases was substantially similar, but there were minor variations between each. The clause in the agreement dealing with indictment number 06–CR–1910 read:

   If the △ fails to appear at sentencing, fails to attend the production of his PSI, or is *charged* w/ any offense, class B misdemeanor or greater between the plea and sentencing dates, the △ agrees to serve a 40 year sentence w/ no motion for probation or shock probation.

The clause in the agreement for indictment number 06–CR–2479 read:

   The C/W agrees to ROR the △ pending sentencing, but if the △ fails to appear for his PSI, fails to appear for sentencing, or picks up any charges class B misdemeanor or higher, the △ agrees to serve a 40 year sentence w/ no motion for probation or shock probation.

The clause in the agreement for indictment number 06–CR–3335 read:

   C/W agrees to ROR the △ pending sentencing, but if the △ fails to appear for his PSI, fails to appear at sentencing, or picks up

did not specify how the individual sentences would be structured to achieve the forty-year term.

On August 24, 2007, Appellant appeared before the trial judge, who conducted the *Boykin* colloquy [3] before accepting Appellant's guilty pleas. Appellant was clearly aware of all the terms of his plea agreement. Other details of that hearing are provided below. The case was assigned for final sentencing in October 2007 and Appellant was released on his own recognizance. He failed to appear for sentencing, and a bench warrant for his arrest was issued.

Appellant was arrested on the warrant and was brought before the court for sentencing in December 2007. In the meantime, it was learned that four misdemeanor bad check charges had been placed against him since the entry of his guilty plea. At the hearing, Appellant moved to withdraw his guilty pleas and requested a continuance so that he could present evidence to show that when he pled guilty his judgment was impaired by the prescription medications he was taking for a psychiatric condition. He argued alternatively that the "hammer clause" should not be invoked and requested an opportunity to present evidence to explain his failure to appear and the intervening bad check charges. The trial court denied his mo-

tions and proceeded forthwith to impose the sentence, noting that Appellant's violations had activated the "hammer clause" of the plea agreement. However, as the judge began to impose the forty-year sentence, she discovered that the sentences for the individual charges reflected in the guilty plea judgments added up to only thirty-five years. She then fixed his sentence at a thirty-five year sentence,[4] and entered final judgments accordingly.

Appellant raised several issues on appeal. First, he argues that before suffering the enhanced sentence of a "hammer clause," he was entitled to a jury trial on the factual issues that triggered the enhancement. He relies upon *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which holds that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and be proved beyond a reasonable doubt." [5] Next, he claims that the trial court improperly interpreted the plea agreement as imposing strict liability for any breach of the conditions of release, and thus allowed him no opportunity to show justification for his lack of compliance. Third, he argues that by pre-judging the sentence that would be imposed, the trial court failed to exercise independent discretion required by the applicable

any new *charges* class B misdemeanor or higher, the △ agrees to serve a 40 year sentence w/ no motion for probation or shock probation.

3. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

4. The written judgments on Appellant's guilty pleas do not conform to the actual pleas he entered, nor do they conform to the written plea agreements. He pled guilty to four Class–D felonies and one Class–C felony, with maximum sentences adding up to only 30 years. A footnote in Appellant's Brief implies that the trial court later reduced the sentence

from thirty-five years to thirty years, but we find nothing in the record to indicate that such an order was entered. The final judgments from which this appeal is taken reflect a thirty-five year sentence. Therefore, we shall refer to Appellant's sentence as being thirty-five years. Whether it be thirty-five years or thirty years is immaterial to our resolution of this appeal.

5. *Apprendi* involves a legislatively-authorized enhancement of sentence under New Jersey's hate crime statutes, and not as the quoted section might imply, a sentence not authorized by statute.

statutes for the "meaningful" sentencing hearing. Finally, he argues that the trial court abused its discretion when it denied his motion to withdraw from the guilty plea and when it denied his motion for a continuance to obtain evidence in support of his motion. We reverse Appellant's convictions because the plea agreement with the "hammer clause" resulted in the imposition of an unlawful sentence, and because we agree with Appellant's argument that in the acceptance of the plea and imposition of the sentence, the trial judge did not exercise the independent discretion required for compliance with the requirements of KRS 533.010(1), 533.010(2), KRS 532.050(1), KRS 532.110(1) and RCr 11.02. Accordingly, we decline to address the remaining issues raised by Appellant.

## II. ANALYSIS

### A. THE IMPOSITION OF A SENTENCE IN EXCESS OF THE APPLICABLE STATUTORY MAXIMUM PENALTY IS IMPERMISSIBLE

■ This case draws the attention of this Court to the plea agreement concept referred to above as a "hammer clause." In *Jones v. Commonwealth,* 995 S.W.2d 363 (Ky.1999), we upheld a similarly structured plea agreement. While both parties acknowledge the *Jones* holding, and neither party challenges the validity of the "hammer clause" concept, Appellant challenges the procedure by which the "hammer" provision in this case was activated, and the thirty-five year sentence that was imposed. The Commonwealth urges this Court to uphold Appellant's sentence on the basis that, having agreed to serve a forty-year prison sentence if he violated

the conditions of his release, Appellant simply "got what he bargained for," citing *Myers v. Commonwealth,* 42 S.W.3d 594, 597 (Ky.2001) for the principle that a defendant in a criminal action may waive the statutory maximum sentence and agree to a sentence beyond the legal range of punishment. *See also Johnson v. Commonwealth,* 90 S.W.3d 39, 44 (Ky.2002). We reject the Commonwealth's argument, and in so doing we conclude that our analysis in *Myers* was flawed, warranting its reconsideration. Appellant's thirty-five year sentence exceeded the lawful range of punishment established by the General Assembly, and whether agreed upon or not, the trial court's imposition of such a sentence is a violation of the separation of powers doctrine embodied in Sections 27 and 28 of the Kentucky Constitution, and is an abuse of discretion.

First, we note that our decision in *Jones,* 995 S.W.2d 363, provides no support for the "hammer clause" now before this Court. *Jones* was a case of first impression in which we upheld a plea agreement which called for a sentence of six years' imprisonment with the proviso that if the defendant (Jones) failed to appear in court for sentencing, the Commonwealth would instead recommend a twenty-year sentence. *Jones* failed to appear for sentencing, and when he was eventually brought before the court for sentencing, the court imposed the twenty-year sentence as recommended by the Commonwealth. Guided by the decisions of federal courts in *United States v. David,* 58 F.3d 113 (4th Cir.1995); *United States v. Rivera,* 954 F.2d 122 (2nd Cir.1992); and *United States v. Garcia–Velilla,* 122 F.3d 1 (1st Cir.1997),[6] we upheld the twenty-year sen-

---

**6.** The federal cases cited above and in *Jones* are based upon the federal system of *determinate* sentencing guidelines. In each case, the federal prosecutor offered the defendant a sentence reduction, authorized by the federal sentencing guidelines, in return for a defendant's "substantial assistance." When the defendant in each case failed to comply with the

tence in *Jones*. Critical to that decision was our recognition of the fact that the sentence of twenty years was within the range established by the legislature for Jones's crimes. *See Jones*, 995 S.W.2d at 366 (stating "[B]oth the six-year and twenty-year sentences were within the statutorily prescribed range and there was no impermissible reduction of charges or sentence offered."). The same cannot be said for Appellant's sentence in this case.

The forty-year sentence contained in the plea agreements' "hammer clause," as well as the thirty-five year sentence actually imposed,[7] violate Kentucky law. KRS 532.110(1)(c) provides:

(1) When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime ... except that (c) The aggregate of consecutive indeterminate terms *shall not exceed* in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed. In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years.

(emphasis added.)

KRS 532.080 provides, in pertinent part:

(6)(b) If the offense for which he presently stands convicted is a Class C felo-

ny or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which *shall not be less than ten (10) years nor more than twenty (20) years.*

(emphasis added.)

*See Gibbs v. Commonwealth*, 208 S.W.3d 848, 855 (Ky.2006) (reversing 105–year sentence on grounds that under KRS 532.080(6)(b) the longest sentence one could receive for a combination of Class C and Class D felony convictions was twenty years.)

Second-degree robbery, a Class C felony, was the highest class of crime for which Appellant was convicted. KRS 515.030. Therefore, the aggregate of the sentences to be imposed upon Appellant could not lawfully exceed twenty years.[8] KRS 532.110(1)(c) does not give a trial court leeway to impose a greater sentence. To the contrary, it explicitly states, through its incorporation of KRS 532.080(6)(b),[9] that the sentence "shall not exceed" twenty years. Unlike the sentence we upheld in *Jones*, Appellant's sentence is not "within the statutorily prescribed range" of punishment. *Jones*, 995 S.W.2d at 366.

---

agreed upon "substantial assistance," the prosecutor declined to recommend the reduction, and the higher sentence was imposed. Significantly, in each case, the sentencing alternatives all complied with the federal sentencing guidelines and were within the range of penalties authorized by Congress.

7. See footnote number 4.

8. There are several statutory exceptions to this general rule. *See* e.g., KRS 532.110(3) (If a person is convicted of an offense that is committed while he is imprisoned in a penal or reformatory institution, during an escape from imprisonment, or while he awaits imprisonment, the sentence imposed for that

offense may be added to the portion of the term which remained unserved at the time of the commission of the offense. The sentence imposed upon any person convicted of an escape or attempted escape offense shall run consecutively with any other sentence which the defendant must serve); KRS 533.060(3) (Sentence for crime committed while awaiting trial to run consecutively with sentence for crime for which person was awaiting trial). Our review of Appellant's charges indicates that *none* of the foregoing exceptions apply to him.

9. KRS 532.080 is the persistent felony offender sentencing statute.

We return now to our reconsideration of *Myers*. The issue in *Myers* was raised by way of RCr 11.42, alleging the ineffective assistance of counsel who had advised Myers to accept a plea agreement for a prison sentence, which on its face, exceeded the limits authorized by KRS 532.110(1)(c). By holding that "a defendant may validly waive the maximum aggregate sentence limitation in KRS 532.110(1)(c) that otherwise would operate to his benefit," *Myers*, 42 S.W.3d at 597, the *Myers* Court viewed KRS 532.110(1)(c) as simply an enactment creating specific sentencing rights for individual defendants, who may chose to forego them. We see the statute as an exercise of the General Assembly's constitutional authority to establish a comprehensive and cohesive system of sentencing laws, including the range of punishments that are to be imposed in the name of the Commonwealth of Kentucky.

In *Hoskins v. Maricle*, 150 S.W.3d 1, 11–12 (Ky.2004), we recognized the extraordinarily strong separation of powers doctrine provided by Sections 27 and 28 of the Kentucky Constitution.[10] In *Hoskins* we stated, "The power to define crimes and *assign their penalties* belongs to the legislative department...." *Id.* at 11 (emphasis added) (citing *United States v. Evans*, 333 U.S. 483, 486, 68 S.Ct. 634, 92 L.Ed. 823 (1948) ("[D]efining crimes and fixing penalties are legislative, not judicial functions.")); *Cornelison v. Commonwealth*, 52 S.W.3d 570, 573 (Ky.2001) ("discretion to define the level of harm and the appropriate punishment is within purview of Legislature, not this Court"). Recently, in *Sanders v. Commonwealth*, 301 S.W.3d

497 (Ky.2010), we reversed a persistent felony offender conviction predicated upon a violation of KRS 218A.500 (Possession of Drug Paraphernalia) because KRS 532.080(8) expresses the clear and unequivocal mandate of the General Assembly that a persistent felony offender conviction shall not be based upon a violation of KRS 218A.500. No less deference is due to the General Assembly's constitutional authority, expressed through KRS 532.110(1)(c), for setting the maximum punishment to be imposed for specific criminal convictions and combinations thereof, which in Appellant's case is twenty years.

We have otherwise consistently recognized that sentences falling outside the permissible sentencing range cannot stand uncorrected. In *Ratliff v. Commonwealth*, 194 S.W.3d 258, 277 (Ky.2006), a trial judge failed to note in the final judgment which of the several multiple sentences totaling 105 years were to be served concurrently and which were to be served consecutively. We held, "[i]f the omission was a clerical error and the trial judge intended to impose a sentence in excess of seventy years, the sentence violates KRS 532.110(1)(c).[11] The judgment must be vacated ... insofar as it imposes a maximum aggregate sentence in excess of seventy years." In the opposite direction, *Neace v. Commonwealth*, 978 S.W.2d 319, 322 (Ky. 1998) holds that the trial court properly corrected a jury verdict setting a lower sentence than the minimum provided by the statutes. We recognized that "[a]ny other result would permit juries to rewrite penalty statutes and effectively nullify the sentencing laws ... [T]he jury's

---

10. "Perhaps no state forming a part of the national government of the United States has a Constitution whose language more emphatically separates and perpetuates what might be termed the American tripod form of government than does our Constitution...." *Sibert*

*v. Garrett*, 197 Ky. 17, 246 S.W. 455, 457 (1922).

11. The convictions were for one class-A felony and seven class-C felonies, for which KRS 532.080 and KRS 532.110(1)(c) prescribe a maximum penalty of seventy years.

sentencing recommendation fell outside the required statutory range, and the trial court properly corrected the sentence to conform to the law."

Under *Myers*, the parties and the trial court may completely disregard KRS 532.110(1)(c) by accepting plea agreements to the contrary. Yet, we see nothing in the language of the statute to suggest that the General Assembly intended to excuse plea agreements from the mandatory provisions contained in the statute. Whether recommended by an errant jury or by the parties through a plea agreement, a sentence that is outside the limits established by the statutes is still an illegal sentence. We do not see how an illegal sentence set by a jury (as in *Neace*) does any more to "nullify the sentencing laws" than an illegal sentence imposed by a judge pursuant to a plea agreement. There is no sound rationale by which we should condemn the one as we condone the other. Under our Constitution, it is the legislative branch that by statute establishes the ranges of punishments for criminal conduct. It is error for a trial jury to disregard the sentencing limits established by the legislature, and no less erroneous for a trial judge to do so by the acceptance of a plea agreement that disregards those statutes.

Because it is the trial judge, and not the jury or the prosecutor or the defendant, that actually imposes a sentence by signing his or her name to the final judgment, it is to the judiciary that the legislative commandments of KRS 532.080(6)(b) and KRS 532.110(1)(c) are directed. A sentence that lies outside the statutory limits is an illegal sentence, and the imposition of an illegal sentence is inherently an abuse of discretion.

■ Our conviction in this regard is not swayed by the argument that Appellant consented to the illegal punishment. As stated above, the statutory limitations restrain only the authority of a judge to impose an unlawful sentence; they do not restrain a party's ability to agree to one. We would not compel the executive branch to carry out a sentence of corporal punishment, such as a public whipping, stoning, or dismemberment of the sort that is lawful in some cultures, but not in our own, simply because the defendant consented. Our courts must not be complicit in the violation of the public policy embedded in our sentencing statutes by turning a blind eye to an unlawful sentence, regardless of a defendant's consent. To the extent they hold otherwise, *Myers*, 42 S.W.3d 594, and *Johnson*, 90 S.W.3d 39, are overruled, along with any other decisions so holding.

■ Generally, plea agreements in criminal cases are contracts between the accused and the Commonwealth, and are interpreted according to ordinary contract principles. *Covington v. Commonwealth*, 295 S.W.3d 814, 816 (Ky.2009); *O'Neil v. Commonwealth*, 114 S.W.3d 860, 863 (Ky. App.2003). A widely recognized principle of contract law is that agreements that run contrary to law, or are designed to avoid the effect of a statute, are illegal and will not be enforced. *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 821 (Ky.App.2008); and, 17A Am.Jur.2d Contracts § 239 (1991). Because the plea agreement involved here contravenes KRS 532.110(1)(c) and KRS 532.080(6)(b), it is a contract which our courts may not enforce.

We neither endorse nor condemn the general use of the "hammer clause" in a plea agreement. Except for *Jones*, 995 S.W.2d 363, we have had no opportunity to examine the concept. The sentencing extremes, ten years versus forty years, posited in this case may not be representative of a typical "hammer clause." The making of a plea agreement is a matter between the accused and the Commonwealth. Our disapproval of the specific plea agreement involved here arises from the fact that its acceptance by the court resulted in the

imposition of an illegal sentence. A "hammer clause" which remains within the legislatively authorized sentencing ranges remains an appropriate plea bargaining tool subject to the trial court's review and exercise of its independent discretion as described in the following section of this opinion.

We conclude, for the reason set forth above, that the plea agreement entered into in this case should have been rejected. The acceptance or rejection of a guilty plea is covered by RCr 8.10, which provides in pertinent part:

> If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in that guilty plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

Accordingly, we reverse and remand this matter to the trial court for further proceedings permitting Appellant to withdraw his guilty pleas. As part of its plea negotiation, the Commonwealth agreed to the dismissal of the criminal syndicate charge and one of the theft charges under Indictment 2006–CR–1910. Reversing this matter and permitting Appellant to withdraw his pleas allows for the reinstatement of those charges, should the Commonwealth elect to do so.

B. *THE TRIAL JUDGE FAILED TO FOLLOW THE REQUIREMENTS OF APPLICABLE STATUTES GOVERNING THE IMPOSITION OF THE APPELLANT'S SENTENCE*

Appellant argues that the trial judge, by committing in advance of the sentencing hearing to apply the forty-year "hammer clause" sentence if a violation of the conditions occurred, failed to follow the requirements of applicable sentencing statutes, and failed to exercise independent judicial discretion at the sentencing hearing. We agree, and begin our discussion of the issue with a review of the relevant statutes.

KRS 532.050(1) states that "[n]o court shall impose a sentence for conviction of a felony, other than a capital offense, without first ordering a presentence investigation after conviction and giving due consideration to a written report of the investigation." RCr 11.02 requires "[b]efore imposing sentence the court shall ... examine and consider the (presentence) report ... [.]" KRS 533.010(1) provides "[b]efore imposition of a sentence of imprisonment, the court shall consider probation, probation with an alternative sentencing plan, or conditional discharge." The trial court may impose a sentence of imprisonment (with exceptions not applicable here) only "after due consideration of the nature and circumstances of the crime and the history, character and condition of the defendant." KRS 533.010(2).

Appellant directs our attention to *Edmonson v. Commonwealth,* 725 S.W.2d 595, 596 (Ky.1987), wherein we reversed a final judgment in a criminal case because "the trial judge had either made up her mind as to the sentence which would be imposed, or she had tentatively decided what sentence to impose unless the defendant came forward with some compelling reason for leniency." There, the judge's predisposition to a particular result was evident because the judgment imposing the sentence had been prepared before the sentencing hearing, and was simply hand-

ed to counsel when the hearing concluded. We held:

> KRS 532.110(1) grants the trial court discretion to impose concurrent or consecutive sentences. However, such discretion must be exercised only after the defendant has had a fair opportunity to present evidence at a meaningful hearing in favor of having the sentences run concurrently or present other matters in mitigation of punishment. The statutes and rule [RCr 11.02] are not mere procedural formalities, but are substantive and may not be ignored.

*Id.* at 595.

In the instant case, while it does not appear that the final judgments were drafted in advance as in *Edmonson,* our review of the record of both the guilty plea hearing and the sentencing hearing leaves no doubt that the sentencing decision had been made prior to the sentencing hearing, and was made before "due consideration" could have been given to the "nature and circumstances of the crime and the history, character and condition of the defendant." KRS 533.010(2).

When Appellant entered his guilty pleas, the judge told him, "If you don't follow through [with the conditions of release], it's forty [years] ... and, I'm telling you, it'll be forty [years] and I guess I'm still in shock over that!" At final sentencing hearing, after denying Appellant's motion for a postponement, the judge called attention to the plea agreement and said to Appellant's counsel, "If he [violated a condition of release] *he was going to serve forty years* .... I will entertain any comments you have, if you'd like to make comments, but I will tell you that based on

my review of the entire case, I will sentence in accordance with the recommendation [of forty years]." To Appellant, the judge said, "Now you're asking the court not to follow the agreement when *I told you I would.*" The judge disclaimed the sentencing decision, telling Appellant, "I didn't create the time [referring to the forty-year sentence] ... Mr. McClanahan, you made the choice and I'm giving you your choice." The judge then asked Appellant, rhetorically, "Is [the forty-year sentence] fair at this point? Is it just? Yes, because it is in accordance with the law." [12] As clearly as the pre-drafted judgments in *Edmonson,* the judge's words demonstrated that independent judgment or discretion, as required by the statutes, had not been exercised in the imposition of Appellant's sentence.

The above-cited statutes and RCr 11.02 allow a trial judge to impose a sentence in a felony case only *after* due consideration of the presentence report and all relevant factors. The judge told counsel at sentencing that his comments would be "entertain[ed]" but that the decision to impose a forty-year sentence had been made. The superficial reference to a "review of the entire case" was no substitute for the "meaningful hearing" contemplated by our decision in *Edmonson,* and required by our statutes.[13] The judge reminded Appellant that she had warned him four months earlier (well before the presentence investigation was done), what his sentence would be. That predisposition is inconsistent with *Edmonson* and the statutes.

The teaching of *Edmonson* bears repetition: *The statutes and RCr 11.02 are not*

---

12. As set forth above, the sentence of forty years, or thirty-five years, was not "in accordance with the law."

13. "Due consideration" and a "meaningful hearing" should have revealed the fact that Appellant pled guilty to five offenses but was being sentenced on six, one of which was not included in an indictment.

*mere procedural formalities, but are substantive and may not be ignored.* The imposition of a sentence in a criminal case is one of a trial judge's most solemn responsibilities. In felony cases, it is the circuit court judge who shoulders the awesome weight of striking the balance between doing justice for the accused and vindicating the peace and dignity of the Commonwealth. It is the faithful adherence to the policies of justice embodied in our sentencing statutes and rules that preserves the great respect and high regard most citizens of this Commonwealth have for our trial court judges. We refer to the sound advice offered by Justice Martin E. Johnstone, writing for this Court in *Matheny v. Commonwealth*, 37 S.W.3d 756, 759 (Ky.2001):

> For guidance to the bench and bar, we set forth the preferred procedure a trial court should follow when accepting a guilty plea that is made pursuant to a plea agreement. As stated by the Court of Appeals in *Misher v. Commonwealth*, [576 S.W.2d 238 (Ky.App.1978)], "The sentencing court should merely accept the plea, note the recommendation or agreement concerning sentence, and set a day certain for sentencing. No sentencing at all should be carried out until KRS 532.050 has been complied with." *Id.* at 241.

By assuring Appellant upon acceptance of his guilty plea that should he violate the terms of his release, the full force of the "hammer clause" would be dropped upon him, the judge committed to the imposition of a specific sentence in a way that precluded true compliance with KRS 532.050(1), KRS 532.110(1), KRS 533.010(1) and (2), and RCr 11.02. Following *Misher* and *Matheny* avoids that problem.

## III.   CONCLUSION

For the reasons set forth above, the final judgments entered against Appellant are hereby reversed. This matter is remanded to the Jefferson Circuit Court for further proceedings consistent herewith.

All sitting. All concur.