# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 22, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky



2014-SC-000127-MR

DATE 10/13/16 Kim Redmon, DC

JOSEPH BANIS — APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCH PERRY, JUDGE
NO. 10-CR-001867

V.

COMMONWEALTH OF KENTUCKY — APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING AND DISMISSING APPEAL

In late 2009, Appellant, Joseph Banis, his paramour, Jeffrey Mundt, and James Carroll, gathered at Mundt's house in Louisville for a drug infused ménage à trois. However, things quickly went awry. While Carroll and Mundt were engaged in sexual relations, Appellant stabbed Carroll in the throat with a knife and then shot him. Appellant proceeded to point the gun at Mundt and threatened to kill him if he did not help.

Appellant and Mundt wrapped the victim's slain corpse in bedsheets and carried it deep into the bowels of Mundt's historic Old Louisville home. After they began digging a hole in the dirt basement floor in which to place the body they soon realized that their current undertaking required additional tools.

The two then traveled to a nearby hardware store where they purchased the necessary materials.

Sometime thereafter, they stripped the victim of his valuables, cleaned the body with mineral spirits, and beat it with a sledge hammer to loosen the rigor mortis that had set in. They also tied the victim with twine, doused the body in lime, and stuffed it into a 50-gallon plastic container. The top of the container was sealed with tape. Foam sealant was also added to confine the creeping odor of rot. The interment of this pitiful coffin into the dirt rendered the dastardly deed complete and the secret forever laid to rest. Or so it seemed.

In April, 2010, the confederates were arrested in Chicago while in possession of counterfeit currency. Appellant was also in possession of the firearm that was used to shoot the victim in the present case. Of course, the Chicago police did not know that at the time. Appellant and Mundt were subsequently released.

Sometime after they returned to Louisville, Mundt lodged a formal complaint against Appellant to the Louisville Metro Police arising out of a domestic dispute between the two men. While being questioned by the investigating officers, Appellant stated that he had information about an unreported homicide. Appellant told the officers where the body of the victim was located and blamed Mundt. The officers followed Appellant's directions and exhumed the body.

2

As a result, Mundt and Appellant were indicted for murder and robbery. Appellant was also indicted for a sundry of other crimes. The two were tried separately and both defendants testified against each other. Appellant was tried first.

It's important to inject here an unusual procedural twist to both Appellant's case and that of Mundt. Both entered agreements with the Commonwealth which did not entail guilty pleas to the principal crimes.

In exchange for the Commonwealth agreeing not to seek aggravated punishment, Mundt agreed to testify at Appellant's trial. Consequently, at that trial he testified that Appellant stabbed and shot the victim.

A Jefferson Circuit Court jury convicted Appellant of complicity to murder, complicity to first-degree robbery, complicity to tampering with evidence, complicity to first-degree criminal possession of a forged instrument, three counts of possession of methamphetamine, and possession of drug paraphernalia.

After the jury verdict, the Appellant waived the jury sentencing phase of the trial and reached an agreement with the Commonwealth. As part of that agreement, Appellant pled guilty to being a first-degree persistent felony offender. In addition to the sentence, the Appellant also agreed to be available to testify at Mundt's trial. After some vacillation Appellant eventually complied with the agreement and testified at Mundt's trial. In that testimony, Appellant claimed that Mundt killed the victim. A Jefferson Circuit Court jury disagreed and acquitted Mundt of murder but convicted him of facilitation to first-degree

3

robbery and complicity to tampering with evidence. Mundt was sentenced to eight years' imprisonment.

Pursuant to Appellant's agreement with the Commonwealth, the trial court sentenced Appellant to life imprisonment without the possibility of parole for a period of twenty years. Appellant now challenges the validity of that agreement.

## Analysis

As reported previously in general terms, on March 8, 2013, the Appellant's jury returned a guilty verdict and the parties agreed to recess the trial until the following Monday. On March 11, 2013, the parties advised the trial court that an agreement had been reached between the Commonwealth and Appellant. The agreement was titled "Penalty and Witness Availability Agreement" (the "Agreement"). It contained the following conditions:

> In exchange for the Commonwealth's recommendation of a Life sentence with a parole eligibility of twenty years, the defendant, **Joseph Banis, agrees to waive his right to appeal all trial and pre-trial issues**.
>
> Further the defendant, Joseph Banis agrees he is available as a witness in the trial of Jeffrey Mundt and no longer has a Fifth Amendment right. He may be called by any party as a witness. He is subject to examination by the Commonwealth and the co-defendant, Jeffrey Mundt. (Emphasis added).

The Agreement was read aloud in court and Appellant's counsel indicated that he had enough time to discuss the agreement with Appellant and that Appellant understood the agreement. Appellant was placed under oath and the trial court confirmed that he understood what had just occurred. The Agreement was signed by Appellant, his counsel, and the prosecutors. After

4

Appellant acknowledged that he understood, the court accepted Appellant's Agreement and his PFO plea. The court scheduled the sentencing hearing for after the completion of Mundt's trial.

Three days into Mundt's trial, Appellant filed a motion seeking to set aside his agreement with the Commonwealth and for a new trial. He argued that he entered into the agreement involuntarily, and as a result of undue influence and prosecutorial misconduct. As to the latter claim, Appellant contends that prosecutors had met with Mundt prior to Appellant's trial and conspired with Mundt to knowingly present false testimony to the jury in Appellant's case. The trial court held a hearing on the motion, which it subsequently denied.

After some mind changing back and forth during Mundt's trial Appellant finally did testify as agreed.

At his final sentencing hearing, Appellant once again attempted to rescind his Agreement so that he may proceed to the sentencing phase of trial, in which the death penalty would have been an option. However, the trial court ultimately sentenced Appellant to the sentence provided in the Agreement—life without the possibility of parole for twenty years.

"Generally, plea agreements in criminal cases are contracts between the accused and the Commonwealth, and are interpreted according to ordinary contract principles." *McClanahan v. Commonwealth*, 308 S.W.3d 694, 701 (Ky. 2010). As we observed in *Johnson v. Commonwealth*, "[a]ny right, even a constitutional right, may be surrendered in a plea agreement if that waiver was

5

made knowingly and voluntarily." 120 S.W.3d 704, 706 (Ky. 2003) (citing *United States v. Ashe*, 47 F.3d 770, 775–776 (6th Cir. 1995)). However, "[a] guilty plea is involuntary if the defendant lacked full awareness of the direct consequences of the plea or relied on a misrepresentation by the Commonwealth or the trial court." *Edmonds v. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006) (citing *Brady*, 397 U.S. 742, 755 (1970)). We review for clear error. *Id.*

### Undue Influence

As previously stated, Appellant argued that he entered into the Agreement unknowingly and while under undue influence. Appellant's primary argument here is that the trial court failed to hold an extensive evidentiary hearing on the matter. Appellant specifically argues that the court erred by refusing to allow him to testify at the hearing. However, Appellant fails to indicate that he or his counsel provided the court with any significant foundation for his claim that would have necessitated Appellant's testimony. His motion to set aside the Agreement merely claimed that "[Appellant] was under undue influence from family, who spoke with him in the holdover area no less than 4-5 occasions and others." This charge is insufficient to warrant the type of exhaustive hearing requested by Appellant.

Moreover, the record indicates that the trial court did engage in a rather extensive hearing, the thrust of which concerned Appellant's prosecutorial misconduct claim. In fact, Appellant's defense counsel failed to elaborate on its undue influence claim when given the opportunity to do so at the hearing. In

6

any event, the evidence indicates that, prior to entering into the Agreement, the trial court engaged in a thorough colloquy and ensured that Appellant understood that he was waiving his right to appeal. *See Boykin v. Alabama,* 395 U.S. 238 (1969). The court undertook a similar interrogation again after Appellant changed his mind during Mundt's trial and decided to testify in accordance with his original promise. At one point during the second colloquy, Appellant informed the court that he was "quite cogent." It is clear that Appellant knowingly entered into the Agreement free from undue influence.

### Prosecutorial Misconduct

In his motion to Set Aside the Agreement, Appellant argued the following:

> 1) The prosecution's agreement with Mundt did not contain a provision requiring Mundt to be truthful during his testimony;

> 2) The lead prosecutor in Mundt's trial stated in closing argument that she did not believe Mundt's testimony was entirely truthful; and

> 3) Therefore, prosecutors entered into an agreement with Mundt that purposefully excluded a truthfulness provision, conspired with Mundt during their pretrial meeting with him, knew before trial he would present false testimony that it knew would be false in order to obtain the conviction of [Appellant].

The Commonwealth conceded the first two points but denied the third allegation on multiple occasions.

The record from Appellant's trial indicates that the Commonwealth questioned Mundt in front of the jury concerning their pre-trial meeting.

7

Mundt's counsel also cross-examined Mundt concerning that meeting. Therefore, Appellant's jury was apprised of this meeting, which is a typical component of witness preparation, and was permitted to draw its own inferences. Also, it is critical to note that, while Mundt's agreement with the Commonwealth did not contain a clause requiring Mundt to testify truthfully, Appellant's own Agreement with the Commonwealth also omitted such a requirement.

After considering the arguments presented by the Commonwealth and Appellant's counsel, the trial court orally ruled:

> There's no evidence to suggest to the Court that the Commonwealth knew in advance with specificity what Mr. Mundt was going to say, nor is there any evidence to suggest that the Commonwealth or any of its agents told him what to say . . . .
> . . .
>
> The Court's finding is the agreement between the Commonwealth and [Appellant] is valid.

The court followed-up with a written order memorializing its oral ruling that was entered after Appellant's final sentencing hearing. We agree with the trial court's ruling. There is simply no evidence indicating that the Commonwealth conspired with Mundt prior to trial to knowingly present false testimony or that the Commonwealth knew in advance what Mundt would say.

To reiterate, Appellant testified at Mundt's trial that Mundt killed the victim. Mundt testified at Appellant's trial that it was Appellant who killed the victim. They were the only two witnesses to the killing. Clearly someone was lying. The Commonwealth did not act unethically or improperly by calling

Mundt to testify in Appellant's trial so that the jury could assess the veracity of Mundt's statements. Appellant was afforded numerous opportunities to challenge the validity of the Agreement and failed to present any credible evidence in support of his claim.

Because the Agreement is valid and enforceable, Appellant has waived his right to appeal. Therefore, his remaining claims concerning the alleged errors that occurred during his trial are not properly before this Court.

## Conclusion

For the foregoing reasons, we hereby affirm the judgment of the Jefferson Circuit Court and dismiss this appeal.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffrey Allan Cross
Assistant Attorney General