RENDERED:  SEPTEMBER 8, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0900-MR

DARRELL STRUNK                                                    APPELLANT


APPEAL FROM FAYETTE CIRCUIT COURT
v.       HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 12-CR-00334-001


COMMONWEALTH OF KENTUCKY                                          APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, JONES, AND TAYLOR, JUDGES.

JONES, JUDGE:  Darrell Strunk appeals from an order entered by the Fayette

Circuit Court denying his motion for relief pursuant to CR[1] 60.02.  After a

thorough review of the record and the law, we reverse and remand for entry of a

new sentence complying with KRS[2] 532.110(1)(c) and KRS 532.080(6)(b).

---

[1]  Kentucky Rules of Civil Procedure.

[2]  Kentucky Revised Statutes.

## I. BACKGROUND

On December 5, 2011, Strunk committed two robberies in Fayette County. The first occurred at approximately 1:15 p.m., when William Stinnett reported that an individual in a ski mask, later identified as Strunk, entered his home and hit him with a brick. Stinnett and Strunk struggled. Eventually, Strunk gained control of a handgun in Stinnett's pocket and struck him with it. Strunk demanded money and drugs before pointing the gun at Stinnett and pulling the trigger. Fortunately, the gun did not fire because Stinnett had unloaded the gun the night before. Strunk escaped from the home, still carrying Stinnett's handgun. During the skirmish, Stinnett managed to pull off one of the gloves Strunk was wearing and noticed a tattoo on Strunk's right hand. Subsequent DNA testing of the glove would positively identify the attacker as Strunk. (Record (R.) at 186.)

Approximately one hour after the attack on Stinnett, Strunk approached William Eckler at his place of business. Strunk was again wearing a ski mask, though this time he was brandishing a handgun – possibly the one he took from Stinnett. Strunk demanded that Eckler give him "all his stuff." Eckler pulled out his own handgun and fired it at Strunk, hitting him in the hand. The two men fought over Eckler's weapon. Strunk struck Eckler several times using a nearby car battery before he eventually ran away. The Eckler incident was captured on videotape. Later, Strunk sought treatment for the gunshot wound on

his hand at the University of Kentucky Albert B. Chandler Hospital's emergency department. (R. at 185.) Strunk was arrested shortly thereafter.

On March 12, 2012, the Fayette Circuit grand jury indicted Strunk on five counts in connection with the Eckler incident: first-degree robbery,[3] being a convicted felon in possession of a handgun,[4] theft by unlawful taking (over $500.00),[5] operating a motor vehicle on a suspended or revoked operator's license,[6] and for being a persistent felony offender (PFO) in the second degree.[7] For reasons which are not disclosed by the record, Strunk was not connected to the Stinnett incident until months later. On February 6, 2013, presumably as part of his plea negotiations with the Commonwealth, Strunk permitted the Commonwealth to proceed by information for the Stinnett incident,[8] adding

---

[3] KRS 515.020, a Class B felony.

[4] KRS 527.040, a Class C felony.

[5] KRS 514.030, at that time classified as a Class D felony. In 2021, the General Assembly reclassified the penalty for a theft by unlawful taking (over $500.00) as a Class A misdemeanor. 2021 KY. ACTS ch. 66, § 8 (eff. Jun. 29, 2021).

[6] KRS 186.620(2), a Class B misdemeanor.

[7] KRS 532.080.

[8] "All offenses required to be prosecuted by indictment pursuant to Section 12 of the Kentucky Constitution shall be prosecuted by indictment unless the defendant waives indictment by notice in writing to the circuit court, in which event the offense may be prosecuted forthwith by information." Kentucky Rule of Criminal Procedure (RCr) 6.02(1).

additional counts of first-degree robbery and being a first-degree PFO to his previous indictment resulting from the Eckler incident.  (R. at 167-69.)

On May 10, 2013, Strunk appeared in open court with his attorney and entered a negotiated guilty plea in which the Commonwealth agreed to the following:  (1) amending the first-degree robbery count in the Eckler incident to second-degree robbery,[9] enhanced by his second-degree PFO charge; (2) dismissing the counts of being a convicted felon in possession of a handgun, theft by unlawful taking, and operating on a suspended or revoked license; (3) amending the first-degree robbery count in the Stinnett incident to second-degree robbery, and (4) amending the first-degree PFO enhancement for the Stinnett robbery to a count of second-degree PFO.  In exchange, Strunk agreed to an enhanced sentence of twenty years for the Eckler robbery, to be run *consecutively* to an enhanced sentence of ten years for the Stinnett robbery, resulting in a term of thirty years' incarceration.

During the plea colloquy, the Commonwealth and the trial court appeared to be aware of the potential problem in sentencing someone to an aggregate term of thirty years in prison for two Class C felonies when KRS 532.110(1)(c) limits the maximum aggregate term for Class C felonies to twenty years.  Defense counsel urged the trial court to use its discretion, reminding the

_____

[9]  KRS 515.030, a Class C felony.

-4-

court that it had the authority to sentence Strunk for only twenty years, though defense counsel also seemed to acknowledge that he was constrained from lodging an objection to the negotiated thirty-year sentence outlined in the plea agreement. For its part, the Commonwealth was rather brusque in its assessment, stating, "You are agreeing to thirty, don't get cute." The Commonwealth also pointed out that, although the Stinnett charges were added on to the indictment, they were interpreting them as "two separate cases" for purposes of the plea, in order to avoid violating *Blackburn v. Commonwealth*, 394 S.W.3d 395 (Ky. 2011). *Blackburn* discusses the maximum allowable aggregate sentencing under KRS 532.110(1)(c). The trial court accepted Strunk's plea and later sentenced him pursuant to his agreement, for a total of thirty years' incarceration.

Less than a year after sentencing, Strunk moved the trial court *pro se* to modify his sentence pursuant to RCr 11.42, arguing trial counsel provided ineffective assistance when he negotiated a plea agreement which violated the maximum aggregate sentence allowed under KRS 532.110(1)(c). Strunk later renewed this motion, and the Commonwealth filed a response, but the trial court never issued a ruling. On March 5, 2018, more than four years after he filed it, Strunk withdrew this RCr 11.42 motion.[10]

---

[10] As a point of clarification, we note here that Strunk had the assistance of a succession of appointed attorneys from the Department of Public Advocacy while filing his postconviction

Approximately two years after withdrawing his RCr 11.42 motion,

Strunk filed a *pro se* motion pursuant to CR 60.02, again asking the trial court to

bring his sentence in compliance with KRS 532.110(1)(c).  Strunk, with the

assistance of appointed counsel, withdrew this motion several months later for

reasons which are not disclosed by the record.  Finally, on May 12, 2022, with the

assistance of his present counsel, Strunk renewed and supplemented his previous

CR 60.02 motion for relief.  Again, Strunk argued that his negotiated sentence

exceeded the maximum aggregate sentence, pointing out that, "[t]he sentence

imposed . . . is, by law, illegal.  Such an illegality is not waivable."  (R. at 339.)

The trial court denied Strunk's request for a hearing on the matter and

denied the motion in an order entered on June 30, 2022.  The trial court's order

"fully adopt[ed]" the Commonwealth's response to the unruled upon RCr 11.42

motion.  (R. at 348.)  The trial court's reasons for denying the motion were

essentially threefold:  (1) the charges were based on an indictment and an

information, and so were treated separately during the guilty plea in order to avoid

violating case law; (2) Strunk was aware of the terms of the guilty plea, and he

entered the plea knowingly, intelligently, and voluntarily; and (3) Strunk received a

"tremendous deal" with regard to the plea, as it avoided service of time as a violent

---

motions.  However, it appears Strunk's motions regarding the sentencing issue were almost
entirely *pro se* until he hired attorney John Landon, who ultimately filed the present appeal.

offender[11] or a mandatory minimum of ten years in prison.[12] (R. at 350-51.) This appeal followed.

## II. STANDARD OF REVIEW

"We review the denial of a CR 60.02 motion for an abuse of discretion." *Diaz v. Commonwealth*, 479 S.W.3d 90, 92 (Ky. App. 2015) (citing *Partin v. Commonwealth*, 337 S.W.3d 639, 640 (Ky. App. 2010)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "The burden of proof in a CR 60.02 proceeding falls squarely on the movant to affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances that justify CR 60.02 relief." *Foley v. Commonwealth*, 425 S.W.3d 880, 885 (Ky. 2014) (internal quotation marks and citations omitted). "[W]e will affirm the lower court's decision unless there is a showing of some 'flagrant miscarriage of justice.'" *Id.* at 886 (quoting *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983)).

---

[11] *See* KRS 439.3401(1). First-degree robbery is automatically considered a violent offense, whereas second-degree robbery is not. The distinction is important because, "[i]n no event shall a violent offender be given credit on his or her sentence if the credit reduces the term of imprisonment to less than eighty-five percent (85%) of the sentence." KRS 439.3401(4).

[12] *See* KRS 532.080(6)(b), regarding first-degree PFO sentencing for a Class C felony being "not less than ten (10) years." Strunk's plea bargain amended this count to a second-degree PFO.

-7-

As he did below, Strunk asserts that his aggregate sentence of thirty years in prison for two Class C felonies violates KRS 532.110(1)(c). In relevant part, the statute states, "[t]he aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed." KRS 532.110(1)(c). "When KRS 532.080 is applied to determine the maximum aggregate penalty, as opposed to being used to enhance a penalty, the appropriate reference in a case where the underlying felonies are Class D or C felonies is to subsection (6)(b)[.]" *Commonwealth v. Durham*, 908 S.W.2d 119, 121 (Ky. 1995). KRS 532.080(6)(b) reads as follows: "If the offense for which [the offender] presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years."

Based on these principles, the Kentucky Supreme Court has repeatedly held that a trial court may not sentence a defendant to a term of greater than twenty years for multiple Class D or Class C felonies, and has so held for over forty years; *see, e.g.*, *Hendley v. Commonwealth*, 573 S.W.2d 662, 668 (Ky. 1978) (holding that it was error for the trial court to sentence the defendant to a term of

twenty-five years when the highest class of crime was a Class C felony, due to the operation of KRS 532.110(1)(c) and KRS 532.080(6)(b)).  The Supreme Court has gone so far as to say "it is obvious that the trial court would have erred by imposing a total of 30 years of imprisonment" under such circumstances. *Goldsmith v. Commonwealth*, 363 S.W.3d 330, 334 (Ky. 2012).

Admittedly, it was previously possible for a criminal defendant to waive application of KRS 532.110 and agree to an aggregate sentence outside the twenty-year term; *see Myers v. Commonwealth*, 42 S.W.3d 594 (Ky. 2001); *Johnson v. Commonwealth*, 90 S.W.3d 39 (Ky. 2002).  However, in 2010, the Kentucky Supreme Court reversed course and overruled these cases in *McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010).  In *McClanahan*, the Supreme Court reasoned that "plea agreements in criminal cases are contracts between the accused and the Commonwealth and are interpreted according to ordinary contract principles."  *Id.* at 701.  The Court went on to observe that "[a] widely recognized principle of contract law is that agreements that run contrary to law or are designed to avoid the effect of a statute, are illegal and will not be enforced."  *Id*.  Based on this reasoning, the Court concluded that a plea agreement which contravenes KRS 532.110(1)(c) and KRS 532.080(6)(b) is not enforceable. *Id*.  The Kentucky Supreme Court's mandate to the trial court was very clear:

> Because it is the trial judge, and not the jury or the prosecutor or the defendant, that actually imposes a

> sentence by signing his or her name to the final judgment, it is to the judiciary that the legislative commandments of KRS 532.080(6)(b) and KRS 532.110(1)(c) are directed. A sentence that lies outside the statutory limits is an illegal sentence, and the imposition of an illegal sentence is inherently an abuse of discretion.

*Id*.

Here, two of the trial court's reasons for denying relief involve Strunk's putative waiver, either explicitly or implicitly. Whether Strunk "was aware of the terms of the guilty plea, and he entered the plea knowingly, intelligently, and voluntarily" is immaterial – pursuant to *McClanahan*, a defendant cannot agree to an illegal sentence, as it is to *the judiciary* that these statutes are directed. Similarly, even if it is true that Strunk received a "tremendous deal" regarding the plea, he could not waive the General Assembly's sentencing statutes to accept it.

The third reason to deny relief, offered by both the trial court and the Commonwealth, is that Strunk's charges were based on an indictment (Eckler) and an information (Stinnett), and so were deliberately treated separately during the guilty plea negotiations to avoid the effect of the sentencing statutes. After some consideration, this argument must fail as well. In *Goldsmith*, the Kentucky Supreme Court observed that "[h]istorically, each crime was charged in its own indictment. In the modern era, multiple crimes may be charged in one indictment"

and "[e]ach count of an indictment is a separate crime[.]" *Goldsmith*, 363 S.W.3d at 334. Significantly, the Court then pointed out that KRS 532.110 "specifically speaks to crimes rather than indictments." *Id.* In the matter before us, *Goldsmith* shows the flaw in the Commonwealth's attempt to divide the crimes into multiple indictments, or an indictment and information, to avoid the effect of the statutes. KRS 532.110(1)(c) is directed at the aggregate term for all of the crimes at sentencing, and not at the procedural mechanism by which each particular count or crime arrived in front of the sentencing judge.

Furthermore, in *McClanahan*, the Kentucky Supreme Court pointed out that agreements are not only illegal when they directly violate a statute – they are also illegal when they "are designed to avoid the effect of a statute[.]" *McClanahan*, 308 S.W.3d at 701. It is very clear from the record that this particular plea agreement was explicitly crafted with the goal of avoiding the requirements of KRS 532.110(1)(c). "In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly." *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011). We will not accede to a scheme which intends to thwart the designs of the General Assembly. The courts "must not be complicit in the violation of the public policy embedded in our sentencing statutes by turning a blind eye to an unlawful sentence[.]" *McClanahan*, 308 S.W.3d at 701.

-11-

Finally, the Commonwealth urges that we affirm for procedural reasons, asserting (1) Strunk's failure to follow through with his RCr 11.42 motion forecloses relief being granted through CR 60.02, and (2) Strunk's CR 60.02 motion was not brought within a reasonable time, as required by the rule. However, an illegal sentence is void, and the courts must act even when the motion is not timely or appropriate. *Phon v. Commonwealth*, 545 S.W.3d 284, 306 (Ky. 2018). "Illegal sentences must always be correctable" and "[a] void judgment cannot gain validity simply because a defendant waits too long to attack the legality of the sentence." *Id.* at 307. Correction of an unlawful sentence is "not only authorized but required." *Id.* at 308 (quoting *Skiles v. Commonwealth*, 757 S.W.2d 212, 214 (Ky. App. 1988)).

"Generally, a trial court's denial of a CR 60.02 motion will not be overturned absent an abuse of discretion. However, a void judgment is a legal nullity, and a court has no discretion in determining whether it should be set aside." *Duncan v. Commonwealth*, 640 S.W.3d 84, 89 (Ky. App. 2021) (citations omitted). Here, the appropriate remedy is for us to reverse the trial court's order denying relief and remand with instructions to vacate "the excess portion[s] of [Strunk's] sentence and impose a new sentence in accord with the law." *Id.*

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's order denying relief pursuant to CR 60.02. We remand with instructions to the trial court to impose a new sentence compliant with KRS 532.110(1)(c) and KRS 532.080(6)(b).

ALL CONCUR.

BRIEFS FOR APPELLANT:

John Gerhart Landon
Lexington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky