RENDERED: APRIL 18, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2022-SC-0293-DG

COMMONWEALTH OF KENTUCKY                                    APPELLANT


                          ON REVIEW FROM COURT OF APPEALS
V.                        NOS. 2021-CA-0077, 2021-CA-0111,
                                  & 2021-CA-0112
                         OLDHAM CIRCUIT COURT NO. 13-CR-00124


RICKY D. ULLMAN, JR.                                          APPELLEE


**OPINION OF THE COURT BY JUSTICE LAMBERT**

**<u>REVERSING, REINSTATING, & REMANDING</u>**

Ricky Ullman pled guilty to three counts of distribution of a matter portraying a sexual performance by a minor and of being a second-degree persistent felony offender (PFO). The Oldham Circuit Court sentenced him to twelve years, probated for five years. The circuit court imposed several conditions on Ullman's probation including, *inter alia*, to complete a community-based sex offender treatment program (SOTP), maintain sobriety, and report to the Division of Probation and Parole as directed. The circuit court later revoked his probation based on his failure to complete SOTP, his multiple failed drug screens, and for absconding from probation and parole.

Nearly two years after his probation was revoked, he filed a CR[1] 60.02 motion challenging the circuit court's revocation order on the basis that he could not be legally required to complete SOTP. The circuit court granted him CR 60.02 relief and vacated its revocation order. The Court of Appeals affirmed. After thorough review, we hold that Ullman's challenge to the condition that he complete SOTP was untimely and order that the circuit court's revocation order be reinstated. We further hold that a sentencing court may, in accordance with KRS[2] 533.030, impose SOTP as a condition of probation for defendants who have not been convicted of a "sex crime" as that term is defined by KRS 17.500. Finally, we hold that that Ullman's secondary challenge to the circuit court's revocation order under KRS 439.3106 was not properly preserved for our review, and that this case must be remanded for consideration of Ullman's RCr[3] 11.42 claim that has not yet been addressed by the circuit court.

## I. FACTS AND PROCEDURAL BACKGROUND

On September 13, 2013, an Oldham County Grand Jury returned a seven-count indictment against Ullman. Count I and Count II charged Ullman with first-degree unlawful transaction with a minor; Count III charged use of a minor in a sexual performance; Count IV charged rape in the third-degree; Count V charged unlawful use of electronic means to induce a minor to engage

---

[1] Kentucky Rule of Civil Procedure.

[2] Kentucky Revised Statute.

[3] Kentucky Rule of Criminal Procedure.

2

in sexual activity; Count VI charged sexual abuse in the first-degree; and Count VII charged Ullman with being a first-degree PFO.

Although this case was resolved by a plea agreement, this Court discerns from the record before us that the factual basis for Ullman's indictment can be fairly recounted as follows. From approximately June 18, 2013, to June 23, 2013, Ullman, who was thirty-two years old, exchanged sexually explicit text messages and photographs with the victim in this case, who was fourteen years old. The victim, Jane,[4] lived in the same apartment complex as Ullman and was a friend of Ullman's twelve-year-old daughter. On June 23, 2013, Jane had a sleepover with Ullman's daughter at his apartment. After Ullman's daughter went to sleep, Jane stayed up with Ullman and at approximately 4:30 am she and Ullman went into his bedroom. Ullman then vaginally raped Jane for approximately ten minutes and ejaculated on her stomach. Jane disclosed what occurred to her mother five days later, and her mother reported the incident to the Oldham County Police Department.

In November 2014, after the Commonwealth made an initial plea offer and had been engaged in plea negations with Ullman for several months, the Commonwealth informed the circuit court that Jane had recanted some of her allegations concerning the rape. The Commonwealth explained that Jane recanted in text messages sent to Ullman's daughter, but she did not recant to law enforcement or anyone else. Nevertheless, the Commonwealth recognized

---

[4] The victim is referred to via pseudonym to protect her privacy.

that Jane's recantation "complicated" its ability to prove the non-cellphone related offenses in Ullman's indictment. It accordingly decided to revise its initial offer on a plea of guilty and resume negotiations with Ullman. It remained undisputed that Ullman had at least three sexually explicit photographs of Jane on his cellphone.

On April 2, 2015, Ullman accepted the Commonwealth's revised offer, which was as follows: Counts I, II, and III were each amended to distribution of a matter portraying a sexual performance by a minor;[5] Counts IV, V, and VI were dismissed; and Count VII was amended to charge Ullman with being a second-degree persistent felony offender. The Commonwealth recommended a ten-year sentence on Count I based on the persistent felony offender enhancement of Count VII, two years on Count II, and two years on Count III. Counts I and II would run consecutive to one another and concurrent with Count III for a total of twelve years.[6] The Commonwealth required that Ullman serve one year of imprisonment starting from the date of the entry of his guilty plea with the balance probated for five years.

Under the terms of the plea agreement, Ullman also agreed to several recommended conditions of probation. Namely, that he: submit to a sex offender presentence evaluation pursuant to KRS 439.265(6); submit to HIV

---

[5] A Class D felony. KRS 531.340(3)(a). We clarify that KRS 531.340(2) provides a rebuttable presumption of intent to distribute if an individual has more than one unit of material of a matter portraying a sexual performance by a minor.

[6] We note that under the terms of the plea agreement, the twelve-year sentence under the indictment in 13-CR-0124 was to run concurrent with an unrelated five-year sentence for flagrant non-support, Oldham Circuit Court, No. 12-CR-0086.

testing pursuant to KRS 510.320; submit a DNA sample to law enforcement pursuant to KRS 17.170; successfully complete an SOTP pursuant to KRS 197.400, *et seq*; register as a sex offender pursuant to KRS 17.495, *et seq*; be subject to a five-year period of postincarceration supervision pursuant to KRS 532.043; and not have "any missed, diluted, refused, or positive drug screens." After a thorough *Boykin*[7] colloquy, the circuit court accepted Ullman's unconditional guilty plea and postponed the entry of his sentence until after his presentence sex offender evaluation was completed. On the same day, the court also entered an order requiring him to submit to HIV and DNA testing.

On June 5, 2015, following a sentencing hearing, the circuit court entered a judgment and sentence on a plea of guilty on a standard AOC[8]-445 Form (sentencing order) and an accompanying order of probation on an AOC-455 Form (probation order).

In accordance with the Commonwealth's recommendation, the sentencing order sentenced Ullman to "a maximum term of 12 years. . . probated with an alternative sentence as stated in the attached Order of Probation." The sentencing order further mandated that Ullman be subject to a five-year period of postincarceration supervision and that he submit a sample of his DNA to law enforcement. The court also entered a separate judgment of registration designation order on an AOC-454 Form wherein the court checked separate boxes finding that Ullman was guilty of a "sex crime" and a "criminal

---

[7] *Boykin v. Alabama*, 395 U.S. 238 (1969).

[8] Administrative Office of the Courts.

5

offense against a victim who is a minor" and found that he was therefore mandated to register as a sex offender. As he was adjudged guilty of "two or more felony criminal offenses against a victim who is a minor," he was required to be a lifetime registrant.

In the probation order the court sentenced Ullman to "probation with an alternative sentence. . . under the supervision of the Division of Probation and Parole [for] 5 years[.]" In accordance with his plea agreement, Ullman was to serve one year with credit for time served beginning from April 2, 2015, the date of his plea. The court ordered several "additional conditions" of probation. In relevant part, it ordered Ullman to: "Avoid injurious or vicious habits"; "Undergo available medical, substance abuse[,] or psychiatric treatment as follows: S.O.T.P. offered by state (approved) in community based txt program. Must complete successfully; no changing providers [without] court order"; "Report to probation officer as directed"; "Obey all rules and regulations imposed by Probation and Parole"; and "Other:[9] (1) 25 sup. fee (2) no new off, prob. voil'n, missed refused positive diluted drug screens (3) all cond'ns of plea offer are incorporated (4) all conditions listed in SORA[10] are incorporated herein, see attached, (5) defendant allowed contact with his children[.]" The SORA conditions referred to by the court were attached to the probation order and stated, in relevant part:

> *Supervision Considerations*: For Mr. Ullman to maintain an offense-
> free lifestyle, in the context of his being found guilty of the charges

---

[9] What follows was handwritten by the court.

[10] Sex Offender Risk Assessment.

6

as described above, and to minimize his chances of acting out again, it is recommended that he:

> • Enter a counseling program that is specifically designed to address sexual deviancy and sex offender issues. It would be best for this counseling to be conducted by a professional who is experienced in working with sex offender issues and has been designated by the Sex Offender Risk Advisory Board as an "Approved Provider" of sex offender treatment. He should follow all program rules, maintain adequate treatment participation, and complete the program satisfactorily, as judged by the program therapist.

> . . .

> **NOTE: Unless these recommendations are made conditions of Mr. Ullman's release plan, his adhering to these recommendations would be entirely voluntary, and there is no reason to expect that he would do so**.[11]

The parties agreed that Ullman would participate in a community based SOTP program, meaning that he would not be enrolled in an SOTP program until after he had served his one-year sentence.

Following Ullman's sentencing, the record is uneventful until March 28, 2017, when the Division of Probation and Parole filed a "violation of supervision report." The report recounted four separate violations of Ullman's conditions of probation. On January 10, 2017, Ullman reported to his probation officer for a scheduled drug screen but stated he could not produce a sample. The officer

---

[11] An order concerning Ullman's SORA dated June 8, 2015, and entered on June 12, ruled in relevant part: "Based upon the victim's recantation, and the Commonwealth's agreement to dismiss the charges as well as the Defendants (sic) dispute of the accuracy of these allegations, the Court enters this Order to reflect that the Presentencing Investigation Report should be stricken with regard to any allegations of sexual intercourse or other facts which would lead to any inference of guilt on Counts IV, V, and VI. Counts I, II, and III remain unchanged and those consist of Matter Portraying Sex Performance by a Minor, First Offense, three counts, as well as finally Count VII, plea of guilty status as [PFO 2nd]."

instructed him to come back the next day for a drug screen, but he failed to report. On March 1, 2017, he failed to report for a scheduled meeting with this probation officer. On March 22, 2017, he reported for a drug screen and admitted to using Lortab and the drug screen showed the presence of both Lortab and methamphetamine. Ullman filled out an admission sanction form acknowledging his use of both drugs and was taken into custody the same day. Finally, the report notes that Ullman "was terminated from the sex offender treatment program as directed, for violating the drug policy, by testing positive on a drug test." A separate report from the treatment program indicated this occurred on March 27, 2017. Revocation of Ullman's parole was requested based on the foregoing violations.

Two months later, on May 25, Ullman appeared before the circuit court for a revocation hearing. The Commonwealth and Ullman's counsel came to an agreement, which was sanctioned by the court, that Ullman could be released from custody that day and continue probation if he could later prove that he was employed, that he had undergone a mental health assessment, and that he had re-enrolled in SOTP. Apparently, the community based SOTP that Ullman had been in would allow a terminated participant to re-enroll after 180 days if it was the first time he or she had been terminated from the program. Over the course of three subsequent court dates—one in June 2017, one in September 2017, and one in October 2017—Ullman was able to prove those three requirements to the court's satisfaction.

Later, the Division of Probation and Parole filed two additional violation of supervision reports dated March 20, 2018, and April 18, 2018, respectively. The violations alleged across both reports were as follows: Ullman began substance use disorder treatment with an outpatient program on September 6, 2017, and was discharged from the program on September 28 for excessive absences and multiple missed drug screens; on October 9, 2017, he missed a scheduled meeting with his probation officer; on February 22, 2018, his drug screen was positive for Oxycodone; he failed to report to his probation officer on March 16, March 21, March 28, and April 17, 2018; on March 21, 2018, he was discharged from his substance use disorder class for excessive absences; on April 18, 2018, his probation officer attempted a home visit unsuccessfully and left a note directing Ullman to report to the officer the next day and he did not; and, finally, on April 4, 2018, Ullman was terminated from his SOTP for the second time for violating the following terms of the program's contract: failing to take ownership of crime, having two unexcused absences within 90 days of one another, failing to complete a therapy task within 120 days, failing a drug screen, failing to complete substance use disorder classes, and failing to make any of the $5 per month payments for the SOTP classes. Ullman was later taken into custody based on an arrest warrant for absconding from supervision, and the Division of Probation and Parole again requested that his probation be revoked based on the foregoing violations.

On May 24, 2018, the circuit court held a revocation hearing and entered a revocation order on the same day. The Commonwealth requested that

9

Ullman's probation be revoked as he had been given several chances and had demonstrated he was not going to comply with the conditions of his probation. The circuit court agreed and orally ruled, "I am going to revoke him on this. He knows, he's been in front of me many times, he knows he had to do this, and he did not get it done so I'm going to go ahead and revoke his probation." The court's revocation order simply stated that Ullman "stipulated to violations of probation" and a handwritten annotation on the order said, "failure to complete SOTP, + others."

On January 13, 2020, one year and eight months after Ullman's probation was revoked, Ullman filed a combined motion under CR 60.02 and RCr 11.42. His CR 60.02 motion sought to vacate the June 5, 2015, sentencing and probation orders as well as the May 24, 2018, revocation order. His RCr 11.42 motion also sought to vacate the revocation order.

Ullman asserted in his CR 60.02 motion, arguing under *Phon v. Commonwealth*, 545 S.W.3d 284 (Ky. 2018), *McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010), and *Ladriere v. Commonwealth*, 329 S.W.3d 278 (Ky. 2010), that the sentencing and probation orders imposed sentences that were illegal and therefore void by mandating that he: submit to a sexual offender risk assessment, submit to HIV testing, complete an SOTP, and be subject to a five-year period of postincarceration supervision. He further argued that the revocation order was void because the court's reason for revocation was his failure to complete SOTP, which was an illegal condition of probation. Relatedly, he asserted that he did not meet the criteria to be a

10

lifetime sexual offender registrant and should have instead been classified as a 20-year registrant. Ullman also argued under RCr 11.42 that the revocation order was void on the grounds that he was provided ineffective assistance of counsel at his revocation hearing because his counsel did not move to vacate the conditions of his probation he asserted were "illegal and void" and failed to challenge the "illegal" revocation of his probation.

In response, the Commonwealth conceded that Ullman could not be subjected to a five-year period of postincarceration supervision because it would have arguably extended his sentence when his crime of conviction did not qualify for postincarceration supervision under KRS 532.043. Apart from that concession, the Commonwealth argued that the remaining challenged conditions of probation were valid and enforceable and, even assuming arguendo that the conditions were improper, Ullman was barred from challenging them. Relying on *Butler v. Commonwealth*, 304 S.W.3d 78 (Ky. App. 2010) and *Weigand v. Commonwealth*, 397 S.W.2d 780 (Ky. 1965), it asserted that Ullman was required to challenge any allegedly improper condition of probation at the time it was imposed instead of agreeing to the condition, receiving the benefit of probation, violating the condition, and then challenging its validity only after his probation was revoked. It also asserted that Ullman was correctly ordered to be a lifetime sex offender registrant.

In July 2020, after oral argument was held on Ullman's motion and additional briefing was completed, Oldham Circuit Court Judge Karen Conrad, who had presided over the case since Ullman's arraignment, entered an order

11

recusing herself from further participation in the case. The order explained

that Ullman's revocation hearing attorney, against whom his RCr 11.42 motion

was leveled, now worked for Judge Conrad as a staff attorney. Special Judge

Charles Hickman was assigned to the case in her stead. In his order entered

on December 21, 2020, Judge Hickman ruled:

> [P]ursuant to CR 60.02(f) "for any reason of an extraordinary nature justifying relief," the Court **HEREBY VACATES** the portion of the Judgment and Order on Plea of Guilty entered on June 5, 2015, that required Ullman to undergo a sexual offender risk assessment, submit to HIV testing, complete [an] SOTP (Sexual Offender Treatment Program), and be subject to a five-year period of postincarceration supervision, as those requirements are not authorized by statute.[12] The Revocation Order entered on May 24, 2018 is **HEREBY VACATED, Ullman shall be immediately released from the custody of the Department of Corrections,** and **Ullman is hereby returned to probation for a term of five years subject to all his original conditions of probation, except for those conditions which have been determined herein to not be authorized by statute.**
>
> The Court finds that the Oldham Circuit Court correctly determined that Ullman was a lifetime registrant for the Sexual Offender Registry, and makes no alteration on that matter.

Judge Hickman did not address Ullman's RCr 11.42 argument in the order.

Thereafter, the Commonwealth filed a motion for additional findings

under CR 52.02 and to alter, amend or vacate under CR 59.05. In its motion,

the Commonwealth asked the court to specifically address its argument under

---

[12] To clarify, the Commonwealth conceded that Ullman could not be subjected to a five-year period of post incarceration supervision pursuant to KRS 532.043. That portion of his sentence therefore remains vacated. In addition, as the Appellant in this case the Commonwealth does not challenge the circuit court's ruling to vacate the condition that Ullman submit to HIV testing. We consequently do not address Ullman's arguments concerning either of those conditions and would further note that the circuit court's decision to revoke Ullman's probation was not based on a violation of either of those conditions.

*Butler* and *Weigand* that Ullman was precluded from challenging his conditions of probation after revocation occurred. In doing so, the Commonwealth noted that this Court's opinion in *Commonwealth v. Jennings*, 613 S.W.3d 14 (Ky. 2020), rendered four days before the circuit court's December 2020 order was entered, reaffirmed the holdings in *Butler* and *Weigand*, respectively. In the alternative, the Commonwealth requested that the court make specific findings regarding the timeliness of Ullman's challenge to his probation conditions so that the issue could be addressed on appeal.

On January 14, 2021, the circuit court entered an order denying the Commonwealth's motion to alter, amend, or vacate, and granting its motion for additional findings by making the following finding:

> [T]his Court FINDS that [*Butler* and *Weigand*] do not involve illegal and void sentences imposed in violation of the separation of powers doctrine and are, therefore, irrelevant to Mr. Ullman's claims, and, instead, controlling precedents such as [*Phon, McClanahan,* and *Ladriere*], hold that a sentence imposed beyond the limitations of the legislature as statutorily imposed is unlawful, void, a legal nullity, an abuse of discretion, void (sic), *correctable at any time,* and *a defendant's consent to an unlawful sentence is irrelevant.* As a result, defendant Ullman's illegal sentences, as addressed in this Court's December 21, 2020 Order, were required to be vacated without regard to the lack of any previous challenge to those sentences.

The order neither cited nor addressed the *Jennings* opinion. Following the ruling, the Commonwealth appealed.

A split Court of Appeals panel affirmed the circuit court's December 2020 and January 2021 orders. *Commonwealth v. Ullman*, 2021-CA-0077-MR, 2022 WL 2182801, at *3 (Ky. App. June 17, 2022). Like the circuit court, the Court

13

of Appeals summarily dismissed the Commonwealth's argument that Ullman was barred from challenging the conditions of his probation because he failed to object to them at the time they were imposed. *Id.* at *2. The Commonwealth again cited *Jennings*, *Butler*, and *Weigand*, in support of its argument, but the court did not address any of those precedents. *Id.* Instead, the entirety of its analysis on the issue was as follows:

> We do not agree with the Commonwealth's argument and instead quote the following in support of our decision:
>
>> We hold today that a sentence imposed beyond the limitations of the legislature as statutorily imposed is unlawful and void. This holding is narrow: **only a sentence that is illegal and was illegal at the time it was imposed would fall within this holding**. **It is because these sentences are void and unlawful that CR 60.02 provides the proper remedy for relief**.
>
> *Phon*, 545 S.W.3d at 304 (emphasis added). The circuit court did not abuse its discretion in granting Ullman relief under CR 60.02. *Phon*, 545 S.W.3d at 290.

*Ullman*, 2022 WL 2182801, at *2. The Court of Appeals also rejected the Commonwealth's assertion that it should be permitted to renegotiate the 2015 plea agreement because it relied on Ullman's acceptance of the conditions of his probation to its detriment. *Id.* The court's reasoning was that the plea agreement was based on both the victim's partial recantation of her allegations and Ullman's willingness to accept conditions that "were not statutorily authorized." *Id.* Further, it concluded, "[t]he conviction itself is not void, only the order of revocation based upon violation of the illegally imposed conditions.

14

[*Phon*, 545 S.W.3d at 309].” *Id.* The court declined to address Ullman's RCr 11.42 argument, as his CR 60.02 relief was dispositive. *Id.* at *3.

The Commonwealth appealed and now seeks further review from this Court. Additional facts are discussed below as necessary.

## II. ANALYSIS

The Commonwealth asks this Court to reverse the Court of Appeals and reinstate the circuit court's May 24, 2018, revocation order. It argues that the Court of Appeals erred by failing to apply the controlling precedents of *Jennings*, *Butler*, and *Weigand*, all of which hold that a defendant may not challenge a condition of probation for the first time after revocation and must instead object to the condition at the time it is imposed by the sentencing court. It asserts that Ullman's challenge to the condition that he complete community based SOTP was untimely in accordance with those precedents. The Commonwealth further contends that even if Ullman's challenge had been timely, the circuit court acted within its broad discretion under KRS 533.030 to impose any "reasonable condition" of probation. And, that under the facts of this case, requiring Ullman to complete SOTP was reasonable.

In response, Ullman contends that the circuit court and Court of Appeals were correct in relying on *Phon* and *McClanahan* which both direct that an illegal sentence is void and therefore may be challenged at any time. In the alternative, he maintains that even if the circuit court did act within its discretion in ordering that Ullman complete SOTP, the revocation order must nevertheless remain vacated because the circuit court failed to make the

15

required findings to revoke under KRS 439.3106. In the event that this Court does not affirm the Court of Appeals, Ullman requests that we remand to the circuit court for consideration of his argument that he received ineffective assistance of counsel during his revocation hearing.

We hold that Ullman's challenge to his condition of probation was untimely and should not have been considered by the circuit court or Court of Appeals. The circuit court's revocation order is accordingly reinstated. We additionally hold that ordering Ullman to complete SOTP as a condition of his probation was not improper. We decline to address Ullman's arguments concerning the circuit court's failure to abide by KRS 439.3106, as that alleged error was not properly preserved for our review, and he has not requested and briefed review for palpable error. Nevertheless, we agree with his request for remand so that the circuit court may address his RCr 11.42 claims.

## A. Ullman's challenge to the probation condition that he complete SOTP was untimely.

To begin, we reiterate that the circuit court granted Ullman relief based on a motion filed pursuant to CR 60.02. "Whether to grant relief pursuant to CR 60.02 is a matter left to the 'sound discretion of the [trial] court and the exercise of that discretion will not be disturbed on appeal except for abuse.'" *Phon*, 545 S.W3d at 290 (citing *Brown v. Commonwealth*, 932 S.W.2d 359, 362 (Ky. 1996) (quoting *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959)). This Court is therefore without authority to disturb the circuit court's ruling unless it was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

16

Predictably, we must next address the cases of *Weigand*, *Butler*, and *Jennings*, which the Commonwealth asserts in favor of its argument, and *McClanahan* and *Phon*, argued by Ullman. We also felt it necessary to include a discussion of *Commonwealth v. Moreland*, 681 S.W.3d 102 (Ky. 2023). *Moreland* was rendered after briefing was concluded in this appeal but is a member of the *McClanahan* and *Phon* family of case law.

First, in *Weigand*, Roland Weigand pled guilty to two counts of writing bad checks and was sentenced to four years. 397 S.W.2d at 780. The trial court probated his sentence on the sole condition that he be banished from the country; Weigand was a German national and the legality of his presence in the U.S. at that time was uncertain. *Id.* at 780-81. Weigand later violated that condition, and the trial court revoked his probation. *Id.* at 781.

As Ullman now agues to this Court, Weigand argued on appeal that "the substantive effect of imposing a requirement on appellant 'to remain out of the country' rendered the order void ab initio," and, consequently, "[i]ts revocation for a violation of its condition. . .[was] without authority in law." *Id.* Significantly, there was no question whatsoever that Weigand's condition of banishment was not legally imposable, as the Commonwealth conceded that "it [was] beyond the power of a court to inflict banishment as an alternative to imprisonment." *Id.* But this Commonwealth's then-highest court nevertheless affirmed the trial court's order of revocation, holding that

> although probation of a sentence may be a benefit conferred upon
> a convicted criminal for an invalid reason, the order of probation is
> separable from the conviction itself and the judgment entered

17

thereon.  The fact that the probationary order is void does not render the conviction and the judgment void.

The probation itself being a nullity there is nothing left for appellant to do but serve his sentences.  Probation was granted upon his own motion with the advice of his counsel.  He could have appealed from the original order had he disliked the condition imposed.  Instead he chose to accept the void probation and, subsequently, to violate it.  Appellant had the assistance of adequate counsel who was presumed to have known the limitations of the authority of the trial court.

*Id.* (internal citations omitted).

In a very similar case, *Butler*—rendered forty-five years after *Weigand*—Lakinda Butler pled guilty to possession of marijuana in Fayette County District Court and was sentenced to one year which the court probated for two years on the condition that Butler, a Tennessee resident, be banished from Fayette County except to pay fines.  304 S.W.3d at 79.  Less than one year later Butler violated the condition of banishment, and her probation was revoked.  *Id.*  Butler's appeal to Fayette Circuit Court was unsuccessful, and the Court of Appeals granted discretionary review to address whether the district court's revocation violated her constitutional right to free travel.[13]  *Id.* at 80.  Relying on *Weigand*, the *Butler* Court agreed that the condition of banishment was void, as "Kentucky courts have no authority to impose banishment on a person as a condition of probation[.]"  *Id.*  Yet it still upheld Butler's probation revocation.  *Id.*  The Court of Appeals reasoned that

[d]espite the fact that a convicted criminal may be subjected to an improper condition of probation, the judgment of conviction is

---

[13] U.S. Const. amend. XIV § 1.

18

> separable and, thus, survives the void probation order. *Weigand*, 397 S.W.2d at 781. Under such circumstances, "[t]he probation itself being a nullity there is nothing left for [an] appellant to do but serve [her sentence]." *Id.* To prevent this occurrence, a person must challenge the improper condition at the time it is imposed. *Id.*
>
> In this case, Butler accepted the benefit of an invalid probation order but violated the order and was sent to county jail. Although Butler now contends that her constitutional right to freely travel within the United States was violated by the probation condition, she was required to make this argument at the time the condition was imposed. *Id.* Rather, she accepted the void probation with the benefit of avoiding jail and, subsequently, violated it. Therefore, Butler's service of her twelve-month sentence is not a violation of her constitutional rights.

*Id.*

Finally, in *Jennings*, rendered just four years ago, this Court unanimously adopted the rationale of *Weigand* and *Butler*. Keith Jennings pled guilty to failing to register as a sex offender and of being a PFO 1st and was sentenced to seven and one-half years' imprisonment. 613 S.W.3d at 15. The trial court probated his sentence for five years on several conditions, one of which was that he would have "no access to the internet." *Id.* About one month after his sentencing hearing, Jennings successfully moved to have the circuit court modify two conditions of his probation, neither of which concerned his ability to access the internet. *Id.* Less than four months later, Jennings violated that condition of his probation by accessing social media websites and the Commonwealth sought revocation of his probation.[14] *Id.* at 16.

---

[14] Initially, the Commonwealth asserted as a second grounds to revoke that Jennings had been charged with violating a provision of the Kentucky Sex Offender

Following a revocation hearing, the circuit court found that Jennings had violated the condition that he not access the internet and that the condition did not violate his right to free speech, but it nevertheless declined to revoke his probation. *Id.* Instead, the court sentenced him to four months' incarceration, the amount of time he had been incarcerated while waiting for the revocation hearing, as a sanction for his violation. *Id.* Jennings appealed the circuit court's ruling to the Court of Appeals which vacated and remanded, holding that "such a restriction was not narrowly tailored, burdened more First Amendment rights than necessary to further the government's interests, and did not increase public safety," and because the restriction was unconstitutionally vague for various reasons. *Id.*

The *Jennings* Court's opinion seemed inclined to agree with Jennings' contention that the total internet ban may have violated his First Amendment Rights. *Id.* at 16-17. The Court agreed with the Court of Appeals' holding that "complete bans on internet use may, in certain extraordinary cases, pass constitutional muster," but cautioned that "[c]omplete bans should be exceedingly rare." *Id.* Nevertheless, this Court explicitly declined to address whether Jennings' internet ban was appropriate, because his challenge was

---

Registration Act that prohibited access to social media sites. *Id.* at 16. But, while revocation was pending, the United States Supreme Court rendered *Packingham v. North Carolina*, 582 U.S. 98 (2017), which had invalidated a state statute that prohibited registered sex offenders from accessing certain commercial social media websites on First Amendment grounds. *Jennings*, 613 S.W.3d at 15. The Commonwealth withdrew the pending criminal charge in light of *Packingham*, making Jennings' violation of the condition that he not access the internet the sole ground asserted for revoking his probation. *Id.* at 16.

untimely.  *Id.* at 17.  The Court explained that "Jennings did not appeal the probation order, did not object to inclusion of the restriction prohibiting internet access, and did not otherwise seek to modify that condition although he did challenge other terms of the probationary order[,]" and that "[i]t was not until after he had violated the internet restriction that he raised any challenge." *Id.*  It held:

> "[A]lthough probation of a sentence may be a benefit conferred upon a convicted criminal for an invalid reason, the order of probation is separable from the conviction itself and the judgment entered thereon.  The fact that the probationary order is void does not render the conviction and the judgment void." *Weigand v. Commonwealth*, 397 S.W.2d 780, 781 (Ky. 1965) (citations omitted).  A probationer is required to challenge the offending provision at the time it is imposed. *Butler v. Commonwealth*, 304 S.W.3d 78, 80 (Ky. App. 2010) (citing *Weigand*, 397 S.W.2d at 781).

> Jennings does not challenge his conviction but merely contends the trial court's total ban on internet access was improper.  However, by accepting the probation, Jennings evaded serving a lengthy jail sentence, only to face sanctions when he promptly violated its terms.  Jennings' failure to challenge the probation restriction prohibiting all access to the internet at the time it was imposed is fatal to his current request for relief. *Id.*

*Jennings*, 613 S.W.3d at 17.  The Court held that Jennings' constitutional rights were not violated by the imposition of the four-month jail sentence as a sanction for violating his probation, and that "[t]he Court of Appeals should not have entertained the untimely challenge." *Id.*

Additionally, we highlight that KRS 533.020(6) provides that "[n]otwithstanding the fact that a sentence to probation, probation with an alternative sentence, or conditional discharge can subsequently be modified or

21

revoked, a judgment which includes such a sentence shall constitute a final judgment for the purposes of appeal." This lends further credence to the notion that the proper means for a probationer to attack an allegedly illegal condition of probation is to object to the condition when it is imposed or within a reasonable time thereafter and appeal if the sentencing court does not rule in his or her favor.

In this case, Ullman entered a guilty plea and agreed to a sentence of twelve years probated for five years. As a condition of granting Ullman the privilege of probation,[15] the circuit court ordered him to, *inter alia*, complete a community based SOTP program. We need not address here whether imposing SOTP as a condition of probation was appropriate[16] because, as in *Weigand, Butler,* and *Jennings*, it is immaterial. The question is not whether the sentencing court's challenged condition was improper, as it unquestionably was in *Weigand* and *Butler* and as it likely was in *Jennings*. Instead, the question is whether Ullman challenged that condition at the time it was imposed. He did not. His failure to do so rendered him unable to accept the alleged invalid condition of probation to avoid serving a twelve-year sentence, enjoy the privilege of probation for at least two years, violate the condition, have his probation revoked based in part on that violation, and then challenge the probation condition as illegal for the first time one year and eight months

---

[15] *See Butler*, 304 S.W.3d at 80 (citing *Brown v. Commonwealth*, 564 S.W.2d 21, 23 (Ky. App. 1977)).

[16] That argument is instead addressed in Section II(B) of this opinion.

after his probation was revoked. The circuit court's revocation order must accordingly be reinstated.

Moreover, even if we were to agree with Ullman that the condition was improper, the outcome here would not change. "The fact that the probationary order is void does not render the conviction and the judgment void." *Weigand*, 397 S.W.2d at 781. So even if the probation order was void by virtue of it requiring that Ullman complete SOTP, "there is nothing left for appellant to do but serve his sentences." *Id.*

*McClanahan, Phon,* and *Moreland* do not compel us to conclude otherwise. In *McClanahan,* Raymond McClanahan entered into a set of plea agreements with the Commonwealth to resolve three separate indictments. 308 S.W.3d at 696. In exchange, the Commonwealth agreed to recommend a ten-year sentence and objected to McClanahan receiving probation. *Id.* However, pending sentencing, the Commonwealth agreed to release him on his own recognizance if he agreed to "hammer clauses" in each of his plea agreements that provided that if he did not return for sentencing, failed to make himself available for a presentence investigation, or was charged with a new offense, he would serve a much higher sentence than ten-years. *Id.* McClanahan later failed to appear for sentencing and the circuit court sentenced him to thirty-five years. *Id.* at 697.

The *McClanahan* Court reversed the convictions because the "thirty-five-year sentence exceeded the lawful range of punishment established by the General Assembly" and violated the Separation of Powers Doctrine. *Id.* at 698.

23

It therefore could not be upheld regardless of whether McClanahan agreed to it. *Id.* The Court reasoned that, in accordance with KRS 532.110[17] and KRS 532.080[18], the maximum allowable sentence for McClanahan's convictions was twenty years and that the trial court did not have "leeway to impose a greater sentence." *Id.* at 699. Moreover, it held that "[a] sentence that lies outside the statutory limits is an illegal sentence, and the imposition of an illegal sentence is inherently an abuse of discretion." *Id.* at 702. The Court therefore reversed and remanded to the trial court to allow McClanahan to withdraw his guilty pleas and resume plea negotiations with the Commonwealth. *Id.*

The *McClanahan* Court relied upon several precedents to support its holding. *Id.* at 698-701. For example, in *Jones v. Commonwealth*, 955 S.W.2d 363 (Ky. 1999), which involved a hammer clause similar to the one at issue in

---

[17] KRS 532.110(1)(c) states:

(1) When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that:

(c) The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed. In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years[.]

[18] KRS 532.080(6)(b) provides:

(6) A person who is found to be a persistent felony offender in the first degree shall be sentenced to imprisonment as follows:

(b) If the offense for which he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years.

*McClanahan*, the Court upheld a plea agreement that provided for six years'
imprisonment unless Jones failed to appear for sentencing, which would result
in the Commonwealth recommending a twenty-year sentence. *McClanahan*,
308 S.W.3d at 699. Jones failed to appear, the twenty-year sentence was
imposed, and the *Jones* Court upheld the sentence. *Id.* The *McClanahan*
Court noted that "[c]ritical to [the *Jones*] decision was our recognition of the
fact that the sentence of twenty years was within the range established by our
legislature for Jones's crimes. . . [t]he same cannot be said for [McClanahan's]
sentence in this case." *Id.* The *McClanahan* Court further noted the cases of
*Ratliff v. Commonwealth*, 194 S.W.3d 258 (Ky. 2006) and *Neace v.
Commonwealth*, 978 S.W.2d 319 (Ky. 1998), of which it said:

> We have otherwise consistently recognized that sentences falling
> outside the permissible sentencing range cannot stand
> uncorrected. In *Ratliff v. Commonwealth*, 194 S.W.3d 258, 277
> (Ky. 2006), a trial judge failed to note in the final judgment which
> of the several multiple sentences totaling 105 years were to be
> served concurrently and which were to be served consecutively.
> We held, "[i]f the omission was a clerical error and the trial judge
> intended to impose a sentence in excess of seventy years, the
> sentence violates KRS 532.110(1)(c). The judgment must be
> vacated ... insofar as it imposes a maximum aggregate sentence in
> excess of seventy years." In the opposite direction, *Neace v.
> Commonwealth*, 978 S.W.2d 319, 322 (Ky. 1998) holds that the
> trial court properly corrected a jury verdict setting a lower sentence
> than the minimum provided by the statutes. We recognized that
> "[a]ny other result would permit juries to re-write penalty statutes
> and effectively nullify the sentencing laws ... [T]he jury's sentencing
> recommendation fell outside the required statutory range, and the
> trial court properly corrected the sentence to conform to the law."

*McClanahan*, 308 S.W.3d at 700-01.

25

In the same vein, in *Phon*, this Court vacated the imposition of life without the possibility of parole (LWOP) for a juvenile after concluding that the sentence violated our juvenile sentencing statutes. 545 S.W.3d at 299-307. In 1996, sixteen-year-old Sophal Phon entered the home of Khamphao Phromratsamy and Manyavanh Boonprasert and killed them "execution style." *Id.* at 289. Phon also shot the victims' daughter in the head, but she survived. *Id.* In an attempt to avoid the death penalty, Phon agreed with his attorney's recommendation to enter a guilty plea and present a robust mitigation case to a jury prior to sentencing. *Id.* Phon further agreed that LWOP, a then-newly available punishment in the Commonwealth, be available as a sentencing option before the jury. *Id.* Following Phon's sentencing hearing, the jury was presented with the following sentencing options: "death, LWOP, life without the possibility of parole for 25 years (LWOP 25), life imprisonment, or twenty years or more." *Id.* The jury recommend a sentence of LWOP, and the trial court imposed it. *Id.*

After two attempts to overturn his conviction on other grounds, in June 2013 Phon filed for CR 60.02 relief, citing recent U.S. Supreme Court cases concerning the imposition of LWOP for juvenile offenders. *Id.* at 290. Both the circuit court and the Court of Appeals denied his request, and this Court granted discretionary review to determine whether Phon's sentence was legally enforceable. *Id.* After thorough consideration, the *Phon* Court first concluded that the U.S. Constitution's Eighth Amendment did not categorically forbid juvenile offenders from being sentenced to LWOP so long as the sentencing

26

procedures complied with the U.S. Supreme Court's directives in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 577 U.S. 190 (2016). *Id.* at 291-94. It further concluded that "the imposition of an LWOP sentence for a juvenile under *certain circumstances* does not offend the Kentucky Constitution." *Id.* at 299.

Instead, the Court held that Phon's LWOP sentence had to be vacated because it violated a Kentucky juvenile sentencing statute: KRS 640.040(1). *Id.* at 299-307. At the time Phon was sentenced, KRS 640.040 provided that "[a] youthful offender convicted of a capital offense regardless of age may be sentenced to a term of imprisonment appropriate for one who has committed a Class A felony and may be sentenced to life imprisonment without benefit of parole for twenty-five (25) years." *Id.* at 300. In the interim, the legislature added LWOP to our penal code as an available penalty but "LWOP was never added as an enumerated sentence within [KRS 640.040]." *Id.* This Court had previously clarified in *Shepherd v. Commonwealth*, 251 S.W.3d 309 (Ky. 2008), that LWOP was not an available sentence for a youthful offender convicted of a capital crime pursuant to the plain language of KRS 640.040. *Phon*, 545 S.W.3d at 300. Instead, the *Shepherd* Court "interpreted the provision of KRS 640.040(1) to be an exhaustive listing of potential penalties for juveniles convicted of a capital offense: all the penalties for Class A felonies (twenty to fifty years or life) and LWOP 25." *Id.*

After concluding that *Shepherd* applied to Phon's case retroactively, this Court held that "applying *Shepherd* to Phon's case leads to the conclusion that

Phon's sentence was statutorily prohibited[;]" at the time Phon was sentenced "LWOP 25 would have been the maximum permissible sentence and LWOP was not allowable under the juvenile code." *Id.* at 300-01. Next, relying on *McClanahan*, the *Phon* Court reversed the Court of Appeals' holding that Phon's challenge was untimely, placing particular emphasis on the separation of powers violation that occurs when a sentencing court imposes a sentence that is not authorized by statute. *Id.* at 301. It held:

> What matters here is the judiciary's involvement. This Court cannot go beyond the limits that the legislature has placed upon the judicial branch. Part of this conscription of power is why, even when the issue of illegal sentence is not presented to the trial court, this Court is constrained from affirming a sentence found to be contrary to legislative boundaries. This limitation stems from the separation of powers doctrine. "Sections 27 and 28 of the Kentucky Constitution explicitly require separation of powers between the branches of government[.]" *Prater v. Commonwealth*, 82 S.W.3d 898, 901 (Ky. 2002).
>
> . . .
>
> Determining what should be a crime and setting punishments for such crimes is a legislative function. "[T]he legislature makes the laws, deciding what is a crime and the amount of punishment to impose for violations thereof." *Jones v. Commonwealth*, 319 S.W.3d 295, 299 (Ky. 2010) (citing *Wilfong v. Commonwealth*, 175 S.W.3d 84, 92 (Ky. App. 2004) ). . . In contrast, "[t]he judiciary determines guilt and selects or implements a sentence within the legislative range." *Jones*, 319 S.W.3d at 299 (citing *Wilfong*, 175 S.W.3d at 92). This Court in *McClanahan* specifically held that the trial court's imposition of a sentence in violation of legislative directive was "a violation of the separation of powers doctrine embodied in Sections 27 and 28 of the Kentucky Constitution, and is an abuse of discretion." *McClanahan*, 308 S.W.3d at 698. "Under our Constitution, it is the legislative branch that by statute establishes the ranges of punishments for criminal conduct. It is error for a trial jury to disregard the sentencing limits established by the legislature, and no less erroneous for a trial judge to do so

by the acceptance of a plea agreement that disregards those statutes." *Id.* at 701.

*Phon*, 545 S.W.3d at 302-03. The separation of powers violation that results from a sentence exceeding the available statutory range is what led the *Phon* Court to conclude, reluctantly, that "the defendant's timeliness in bringing the attack is immaterial." *Id.* at 303. It reasoned that "the timeliness issue is not one of rewarding a defendant for an appeal that is lacking in form or punctuality[,]" and was instead "about preventing the judiciary from overstepping its bounds and legislating through inaction or, in the trial court's case, action." *Id.* Because of this, the *Phon* Court held that

> a sentence imposed beyond the limitations of the legislature as statutorily imposed is unlawful and void. This holding is narrow: only a sentence that is illegal and was illegal at the time it was imposed would fall within this holding. It is because these sentences are void and unlawful that CR 60.02 provides the proper remedy for relief.

*Id.* at 304. Accordingly, because the General Assembly made its policy clear through KRS 640.040 that LWOP is not an appropriate sentence for juvenile offenders, Phon's sentence of LWOP was void and therefore unenforceable. *Id.* at 307. The Court remanded the case for the trial court to correct the unlawful sentence and to impose a sentence of LWOP 25.[19] *Id.* at 309.

---

[19] The *Phon* Court discussed that under Kentucky case law "even if an illegal sentence is void, it is void only as to the excess portion of the sentence." *Id.* at 306. Phon's sentencing jury had made an unchallenged fact finding that the Commonwealth had proven the presence of aggravating factors sufficient to substantiate the imposition of LWOP 25, LWOP, or death. *Id.* at 309. "Thus, the legal aggravated sentences presented to the jury have been diminished to only one: LWOP 25." *Id.*

29

Last, in *Moreland*, Daniel Moreland pled guilty in relation to two indictments. 681 S.W.3d at 104. Under the terms of the first plea agreement, he entered guilty pleas to two counts of first-degree sexual abuse and agreed to a ten-year sentence of imprisonment for both counts to be served consecutively for a total of twenty years. *Id.* Under the second, he pled guilty to one count of first-degree sexual abuse and agreed to a sentence of ten years' imprisonment. *Id.* Both the Commonwealth's offer on a plea of guilty and the trial court's judgment and sentence on a plea of guilty required that Moreland's twenty-year sentence be a "split sentence": he would serve ten years' imprisonment followed by ten years of probation after the conclusion of his prison term. *Id.*

After serving his ten-year sentence, Moreland was released from prison and began supervised probation in accordance with his plea agreement. *Id.* Three years later, the Commonwealth moved to revoke his probation and Moreland objected, arguing that sentencing him to probation after serving his sentence of imprisonment was illegal. *Id.* The trial court ruled it was without authority to alter the sentence and revoked his probation, and Moreland appealed the ruling. *Id.* The Court of Appeals reversed based on its holding that the sentencing scheme established by the General Assembly did not allow for a period of probation to be served after a sentence of imprisonment. *Id.* Moreover, citing *Phon*, the Court of Appeals noted that an illegal sentence may be set aside at any time, and a defendant's consent to an illegal sentence was irrelevant. *Id.* The Court of Appeals went on to hold that the only remedy was to release Moreland from custody. *Id.* at 105.

30

This Court thereafter granted the Commonwealth's motion for discretionary review. *Id.* The *Moreland* Court affirmed the Court of Appeals insofar as it held Moreland's sentence was illegal and void.[20] *Id.* at 106-107. The Court began by noting that because "'probation is a statutory creature, this Court is bound by the plain meaning of the probation statutes.'" *Id.* at 106 (quoting *Conrad v. Evridge*, 315 S.W.3d 313, 317 (Ky. 2010)). As was germane to Moreland's case, KRS 533.020(1) mandated that "when a person is convicted of or pleads guilty to an offense, and 'is not sentenced to imprisonment, the court shall place him on probation if he is in need of the supervision, guidance, assistance, or direction that the probation service can provide[,]'" while KRS 533.020(4) stated that, "[w]hen the offense is a felony, the period of probation "'shall not exceed five (5) years, or the time necessary to complete restitution, whichever is longer[.]'" *Id.* Based on these statutory directives, the Court held that

> the probation Moreland received violated the statute in that it was for ten years, contrary to the five-year limitation declared in KRS 533.020(4). The trial court also violated the statute by supposing to begin the probationary period ten years in the future, consecutive to a term of imprisonment in state prison for another offense that Moreland had already been sentenced to serve. . . [T]he statutory language is unambiguous, that probation is only available "[w]hen a person . . . who has entered a plea of guilty to an offense *is not sentenced to imprisonment*[.]" KRS 533.020(1) (emphasis added). Moreland was sentenced to imprisonment for

---

[20] The Court reversed the Court of Appeals' holding that the proper remedy was to release Moreland from custody. *Id.* at 108-09. It instead ruled: "Given that we have held this issue is one of illegal sentencing and is a failure to follow the statutory parameters for when probation is available, we hold the remedy in this case is to remand for resentencing." *Id.* at 109.

31

> twenty years and ordered to serve ten years of it. Therefore, probation was not available to him.
>
> . . .
>
> [S]ince implementation of incarceration was ordered in Moreland's case, the sentence purporting to probate ten years of that prison sentence is unlawful. KRS 533.020(1). The statutory scheme creates an "either/or" option, not a "both/and" option.

*Moreland*, 681 S.W.3d at 106-07. Significantly, this Court went on to explicitly state that "[o]ur ruling in [*Jennings*] does not control here." *Id.* at 106. It expounded that in that case "we held a probationer's challenge to a condition of probation ought to have been brought at the time probation was imposed[,]" as "[a]cceptance of an improper condition of probation is tantamount to waiver." *Id.* In contrast, "Moreland [was] not challenging any conditions of probation[,]" but rather "the imposition of probation in and of itself." *Id.* And, because Moreland's "probation was imposed in conjunction with a term of imprisonment," the Court believed that the *McClanahan* rule allowing an illegal sentence to be challenged at any time was applicable. *Id.* at 106-07. Accordingly, it remanded Moreland's case for resentencing. *Id.* at 110.

Based on the foregoing, our jurisprudence clearly distinguishes between when alleged illegal condition of probation may be challenged and when a sentence that falls outside the available statutory range may be challenged. A condition of probation must be challenged at the time it is imposed, or within a reasonable time thereafter, and prior to revocation, whereas an illegal sentence may be challenged at any time. Ullman's sentence was not a "split sentence" like the one at issue in *Moreland*, and what he challenges is a condition of

32

probation, not the imposition of probation itself. He is accordingly entitled to no relief pursuant to *Moreland*. And, he could only seek refuge under the umbrella of *McClanahan* and *Phon* if his twelve-year sentence fell outside the permissible statutory sentence range for his convictions on three counts of distributing a matter portraying a sexual performance by a minor, enhanced by his status as a PFO 2nd. It does not, nor has he ever claimed that it does. Distributing a matter portraying a sexual performance by a minor, first offense, is a Class D felony.[21] Class D felonies have an available sentencing range of one to five years' imprisonment,[22] which was enhanced to a potential sentence of five to ten years for each count based on Ullman's PFO 2nd status.[23] The trial court could therefore have sentenced Ullman to a maximum of thirty years' imprisonment, meaning that his twelve year sentence was well-within the available statutory range and was not an illegal and void under *McClanahan* or *Phon*.

Accordingly, because Ullman's challenge to his condition of probation was untimely, the circuit court's decision to grant his motion for relief under CR 60.02 was a clear abuse of discretion pursuant to *Weigand, Butler*, and

---

[21] KRS 531.340(3)(a).

[22] KRS 532.060(2)(d).

[23] KRS 532.080(5) provides that "[a] person who is found to be a persistent felony offender in the second degree shall be sentenced to an indeterminate term of imprisonment pursuant to the sentencing provisions of KRS 532.060(2) for the next highest degree than the offense for which convicted." Class C felonies carry a potential sentence of five to ten years. KRS 532.060(2)(c).

*Jennings.* We must therefore reverse the Court of Appeals and reinstate the circuit court's May 2018 revocation order.

## B. A sentencing court may order a defendant not convicted of a "sex crime" under KRS 17.500 to complete SOTP as a condition of probation if the court deems the condition "reasonably necessary" in accordance with KRS 533.030.

Notwithstanding our holding that the primary issue in this case is resolved pursuant to the foregoing section of this opinion, this case presents us with an opportunity to clarify an important point of law regarding the authority of our sentencing courts to impose conditions of probation. We therefore take this opportunity to address, as a matter of first impression, whether a trial court's broad discretion under KRS 533.030 includes the ability to order a defendant that has not been convicted of a "sex crime" under KRS 17.500 to complete an SOTP as a condition of probation. We conclude that it does.

KRS 17.500(8)(a) defines a "sex crime," in relevant part, as "[a] felony offense defined in KRS Chapter 510, KRS 529.100 or 529.110 involving commercial sexual activity, 530.020, 530.064(1)(a), 531.310, 531.320, or 531.335[.]" Ullman's convictions for distribution of matter portraying a sexual performance by a minor, KRS 531.340, is not included in KRS 17.500's definition of a "sex crime." It is instead considered a "criminal offense against a minor." KRS 17.500(3)(a)(11). In turn, the statutes governing SOTPs provide that "[t]he department [of corrections] shall operate a specialized treatment program for sexual offenders," and define "sexual offender" as an individual that "has been adjudicated guilty of a sex crime, as defined in KRS 17.500[.]" Consequently, Ullman argues that the circuit court erred by requiring him to

34

complete SOTP as a condition of his probation because he was not convicted of a "sex crime" under KRS 17.500. We disagree.

While we do not dispute that Ullman was not convicted of a "sex crime," we hold that the trial court nevertheless did not err by requiring him to complete an SOTP as a condition of his probation. "In the first place, it is entirely within the discretion of the trial court whether a defendant shall be given his liberty conditionally. This is regarded as a privilege or a 'species of grace extended to a convicted criminal' for his welfare and the welfare of organized society.'" *Ridley v. Commonwealth*, 287 S.W.2d 156, 158 (Ky. 1956) (quoting *Darden v. Commonwealth*, 125 S.W.2d 1031, 1033 (Ky. 1939)". *See also Burke v. Commonwealth*, 506 S.W.3d 307, 314 (Ky. 2016) (noting "the granting of probation is wholly within the discretion of the trial court.)." This discretion has been codified by the General Assembly via KRS 533.030 which states, in pertinent part:

> (1) The **conditions of probation** and conditional discharge **shall be such as the court, in its discretion, deems reasonably necessary to ensure that the defendant will lead a law-abiding life or to assist him or her to do so**. The court shall provide as an explicit condition of every sentence to probation or conditional discharge that the defendant not commit another offense during the period for which the sentence remains subject to revocation.
>
> (2) When imposing a sentence of probation or conditional discharge, the court may, **in addition to any other reasonable condition**, require that the defendant. . .

(emphasis added). The statute then provides a list of twelve potential conditions of probation that may be imposed by the court. The "Kentucky

35

Crime Commission/LRC Commentary" that accompanies KRS 533.030 clarifies that

> It is not intended that the list [in subsection (2)] be exhaustive **or that it limit in any way the discretion of a trial court in tailoring the conditions of probation** or conditional discharge **to the rehabilitative needs of individual offenders**. . . **The only limitation** on the trial judges with respect to such conditions is contained in subsection (1). This provision **requires that conditions imposed** upon a convicted offender **be considered** "**reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so**."

(Emphasis added). Accordingly, by statute, a sentencing court has the discretion to impose *any reasonable condition* of probation that it deems *reasonably necessary* to ensure that the defendant will lead a law-abiding life or that will assist him or her in doing so.

Here, the circuit court was presented with a defendant in his thirties who, without question, had multiple sexually explicit images of a fourteen-year-old girl on his cellphone[24] and pled guilty to distribution of a matter portraying a sexual performance by a minor. Even if his crimes were not "sex crimes" under KRS 17.500, they were indisputably of a sexual nature. Moreover, the circuit court was advised by the Department of Corrections, via Ullman's SORA evaluation, that in order to ensure that Ullman "[maintains] an offense-free lifestyle. . . and to minimize his chances of acting out again" he should

---

[24] Despite Ullman's counsel's attempt to victim blame during the oral arguments held in this case by proclaiming that Jane sent the photographs to Ullman, the fact remains that Ullman is an adult, the victim is a child, and having those images is a felony offense.

36

complete a treatment program for sexual offenders, and that he was unlikely to do so in the absence of a court order.

Furthermore, while the statutes that govern SOTP—KRS 197.400 through KRS 197.440—direct that the Department of Corrections "shall operate a specialized treatment program for sexual offenders,"[25] i.e., individuals convicted of a "sex crime" under KRS 17.500,[26] nothing in those statutes explicitly precludes individuals not convicted of a "sex crime" from participating in an SOTP. Likewise, KRS 532.045, which mandates that completion of a community based SOTP be ordered as a condition of probation for defendants convicted of a sex crime,[27] does not explicitly state that those not convicted of a sex crime cannot be ordered to complete SOTP. Put simply, just because SOTP is *mandated* for certain offenses does not mean it is *precluded* for others. This is a sensible conclusion because SOTP is not a punishment, it is a rehabilitative *treatment program* that endeavors to ensure that sex offenders do not commit additional sexual offenses. If the General Assembly believes in the efficacy of SOTP to such an extent that it has mandated it for certain offenses, why then would we preclude participation by a defendant who may benefit from it simply because they were not convicted of

---

[25] KRS 197.400.

[26] KRS 197.410.

[27] KRS 532.045(4) ("If the court grants probation or conditional discharge, the offender shall be required, as a condition of probation or conditional discharge, to successfully complete a community-based sexual offender treatment program operated or approved by the Department of Corrections or the Sex Offender Risk Assessment Advisory Board.").

a crime for which it is mandated? We therefore hold that a sentencing court may impose completion of SOTP as a condition of probation for defendants not convicted of a "sex crime" under KRS 17.500 if the court finds that the condition is reasonable and is reasonably necessary to ensure that the defendant will lead a law-abiding life or that it will assist him or her in doing so.

There are two cases that give this Court pause in coming to this conclusion: *Ladriere, supra,* and *Miller v. Commonwealth,* 391 S.W.3d 801 (Ky. 2013). They accordingly warrant discussion. In *Ladriere,* Robert Ladriere watched a ten-year old girl use the bathroom in a restroom stall of a county library. 329 S.W.3d at 279. Ladriere entered the girl's stall before she could leave and backed her against the wall but fled when the girl screamed. *Id.* at 279-80. He eventually entered a guilty plea to kidnapping and was sentenced to twenty years' imprisonment. *Id.* at 280. Although the sentencing court acknowledged that kidnapping was not a sex offense *per se,* it further imposed several conditions on his sentence based on his duty to register as a sex offender, including that he complete SOTP. *Id.*

The *Ladriere* Court, reviewing for palpable error, first held that Ladriere could not be subjected to a five-year period of conditional discharge under KRS 532.043 because kidnapping is not listed as a qualifying offense. *Id.* at 282. It then held that he could not be required to complete SOTP, and the entirety of its analysis was as follows:

38

> For the same reasons, ordering Ladriere to complete a Sex Offender Treatment Program (SOTP) was not statutorily authorized. SOTP is a treatment program for sexual offenders. Participation in the program may be ordered when the sentencing court, department officials, or both determine that a sexual offender may have a mental, emotional, or behavioral disorder and is likely to benefit from the program. KRS 197.010(4). However, "sexual offender" as used in KRS Chapter 197 is a person who has committed a "sex crime" as defined by KRS 17.500. KRS 197.410(1). Given that Ladriere did not commit an offense within the purview of the statute's definition of "sex crime," it stands to reason that he is not a "sexual offender" for purposes of the SOTP provisions either.

*Id.* This Court vacated the portions of Ladiere's sentencing order that imposed the five-year period of conditional discharge and ordered him to complete SOTP.[28] *Id.* at 283.

But, as Ladriere was not granted probation and was instead required to complete SOTP as part of his sentence, the trial court's broad discretion under KRS 533.030 was not implicated or considered. Further, as explained *supra,* this Court does not believe it is prudent to bar defendants that would benefit from SOTP from participation simply because they were not convicted of an offense enumerated in KRS 17.500. This, likewise, was not explicitly considered by the *Ladriere* Court.

Next, in *Miller*, Elmer Miller pled guilty to criminal attempt to commit first-degree unlawful transaction with a minor, victim over the age of sixteen, a Class A misdemeanor. 391 S.W.3d at 803. He was sentenced to one year, which the court probated for two years. *Id.* As a condition of probation, the

---

[28] It also vacated the requirement that he submit to HIV testing based on the same reasoning. *Id.* at 283.

court ordered him to "[a]ttend any counseling recommended by probation and parole." *Id.* In turn, probation and parole recommended that Miller enroll in SOTP, and he did so. *Id.* However, SOTP typically took three years to complete, and the length of Miller's probation was only two years. *Id.* Shortly before Miller's probationary period expired, his parole officer informed the court that Miller would be unable to complete the program before his probation expired. *Id.* The court ordered briefing on the issue of whether his probationary period could be extended beyond the two-year limit for misdemeanor offenses provided by KRS 533.020(4), and ultimately found that it could under KRS 532.045(4), which required the completion of SOTP as a probation condition for sex crimes. *Id.*

The *Miller* Court vacated the circuit court's ruling and ordered that Miller be discharged from probation. *Id.* at 809. The Court first held that the circuit court could not extend Miller's probation based on the plain language of KRS 533.020(4). *Id.* at 805. It further disagreed with the circuit court's conclusion that the two-year probation time limit in KRS 533.020(4) was "trumped" by KRS 532.045's requirement that SOTP be completed because Miller was not convicted of a "sex crime" under KRS 17.500 and was therefore not "statutorily required" to complete SOTP. *Id.* More importantly, though, the Court concluded that Miller was never ordered to complete SOTP as a condition of his probation. *Id.* at 808. Rather, "the trial court's probation order. . . conditioned Miller's probation on his '[a]ttend[ing] any counseling recommended by probation and parole[]'" and said nothing about completing SOTP. *Id.* Rather,

40

"[t]hat condition only appeared when Probation and Parole recommended that Miller complete sex offender treatment, which Probation and Parole believed, incorrectly, was required by statute." *Id.* Accordingly, the Court held that Miller did not violate the imposed probation condition that he attend "any counseling recommended by probation and parole." *Id.* His probation could therefore not be extended absent his consent, which he did not provide. *Id.* at 809.

*Miller* is distinguishable from this case because Miller was never ordered to complete SOTP as a condition of his probation. And, as in *Ladriere*, the *Miller* Court did not consider the sentencing Court's discretion under KRS 533.030. Though, even if the court had imposed SOTP, because Miller's conviction was for a misdemeanor, and he therefore could not complete SOTP before the expiration of his probationary period, we would agree that it could not have been considered a "reasonable condition" by the sentencing court.

Based on the foregoing, we hereby hold that under KRS 533.030, a sentencing court may impose SOTP as a condition of probation if the court finds it is reasonable condition within the facts of the case before it and that it is reasonably necessary to ensure that the defendant will lead a law-abiding life or that it will assist him in doing so.

## C. Ullman's assertion that the circuit court's revocation order failed to comply with KRS 439.3106 was not properly preserved for review.

Ullman further asserts that, in the event that we reinstate the circuit court's revocation order based on the Commonwealth's argument that his

41

challenge was untimely, as we do in Section II(A) of this opinion, we must nevertheless uphold the circuit court's later decision to vacate the revocation order because the circuit court did not make fact findings sufficient under KRS 439.3106 and *Commonwealth v. Andrews*, 448 S.W.3d 773 (Ky. 2014) to support the revocation decision. Specifically, Ullman argues that the circuit court failed to make any finding that Ullman's failure to comply with the conditions of his probation constituted a significant risk to his victim or the community at large and that he could not be appropriately managed in the community. KRS 439.3106(1)(a); *Andrews*, 448 S.W.3d at 780 (holding "that KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked.").

However, Ullman failed to challenge this alleged error before the circuit court, and it is therefore not preserved for our review. *Accord Lainhart v. Commonwealth*, 534 S.W.3d 234, 237 (Ky. App. 2017). And, nowhere in Ullman's brief to this Court does he request review for palpable error pursuant to RCr 10.26.[29] "Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error

---

[29] RCr 10.26 provides that "[a] palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant." *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008) (citing *Thomas v. Commonwealth*, 153 S.W.3d 772, 782 (Ky.2004); *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky.2005), *overruled on other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010)).

We do not believe the circumstances presented by this case constitute extreme circumstances amounting to a substantial miscarriage of justice and therefore decline to address Ullman's argument. The Division of Probation and Parole first sought revocation of Ullman's probation in March 2017 for several violations of his probation conditions, namely: evading a drug screen and failing to report to his probation officer as directed the following day; another failure to report to his probation officer thereafter; failing a drug screen which showed the presence of Lortab and methamphetamine; and for being terminated from his SOTP for failing a drug screen.

The circuit court nevertheless gave Ullman a second chance to comply with the conditions of his probation, but by the following March the Division of Probation and Parole was again seeking revocation, this time for even more violations, specifically: being terminated from his outpatient substance use disorder treatment program for excessive absences and missed drug screens; failing to report to his probation officer as directed on six separate occasions; failing a drug screen which showed the presence of Oxycodone; being discharged from his substance use disorder treatment class for excessive

43

absences; and being terminated from his SOTP for a second time based on six distinct violations of that program's contract.

Based on the foregoing, we cannot conclude that the circumstances of this case warrant *sua sponte* review for palpable error.

## D. Ullman's RCr 11.42 claims must be remanded for consideration by a fact-finding court.

Ullman's final argument is that his revocation hearing counsel's representation constituted prejudicial ineffective assistance of counsel pursuant to RCr 11.42. He faults his revocation hearing counsel for failing to challenge the conditions of his probation during his revocation hearing and for failing to object to and/or appeal the circuit court's failure to make the required findings under KRS 439.3106 prior to revoking his probation. He contends that if this Court reverses the Court of Appeals and reinstates the circuit court's revocation order, we should further order that the case be remanded so that a fact-finding court may address his RCr 11.42 arguments in the first instance. As noted, both the circuit court and the Court of Appeals forewent addressing Ullman's RCr 11.42 arguments on the basis that his CR 60.02 relief was dispositive. As we have already ruled in Section II(A) of this Opinion that Ullman's challenge to the conditions of his probation were untimely, that issue need not be considered. Nevertheless, we agree that remanding to allow the circuit court to address his argument regarding his counsel's failure to challenge the circuit court's failure to make the required findings under KRS 439.3106 prior to revocation is warranted.

44

### III.  CONCLUSION

Based on the foregoing, we reverse the Court of Appeals and hereby reinstate the circuit court's May 24, 2018, revocation order.  We further remand this case to the circuit court for consideration of Ullman's RCr 11.42 arguments.

VanMeter, C.J.; Bisig, Conley, Keller, Lambert and Nickell, JJ., sitting. VanMeter, C.J.; Bisig, Conley, and Nickell, JJ., concur.  Keller, J., concurs in result only.  Thompson, J., not sitting.

COUNSEL FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

Jacob Michael Abrahamson
Assistant Attorney General

Bryan Darwin Morrow
Assistant Attorney General

Courtney J. Hightower
Assistant Attorney General


COUNSEL FOR APPELLEE:

Joseph V. Aprile, II
Lynch, Cox, Gilman & Goodman, P.S.C.